### STATE of Maine

v.

### Aline P. CYR.

Supreme Judicial Court of Maine.

Aug. 3, 1978.

1. The name of the Industrial Accident Commission was changed to Workers' Compensation Commission by P.L.1978, ch. 612.

Joseph M. Jabar, Dist. Atty., J. William Batten, Asst. Dist. Atty. (orally), Augusta, for plaintiff.

Burton G. Shiro (orally), Ronald L. Bishop, Waterville, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and NICHOLS, JJ.

WERNICK, Justice.

Charged with having committed the offenses of criminal mischief (17–A M.R.S.A. § 806) and harassment by telephone (17–A M.R.S.A. § 506) (two charges), defendant Aline P. Cyr waived trial by jury in the Superior Court (Kennebec County). Tried by the court in November, 1977, defendant was found guilty as charged. She has appealed from the judgments of conviction.

We deny the appeal.

### 1.

As her first point of appeal, defendant contends that the evidence failed to support the convictions.

The criminal mischief accusation was that on May 8, 1977, defendant intentionally damaged the flower garden of Joyce Michaud by walking in the flower garden and pulling up flowers from the ground. The evidence revealed that sometime in May 1977, Jill Michaud, the daughter of Joyce Michaud, was awakened at 3:00 a. m. by the sound of a dog barking in front of her house. She looked out the front window and observed defendant on the front lawn of the Michaud property. Defendant, who lived next door to the Michauds, then started to leave the front lawn of the Michauds, carrying something long extending from her hand. Defendant ran around the corner of the fence separating her house from the Michaud house. At approximately 6:00 a. m. Joyce Michaud discovered that her flowers on both sides of the front porch had been dug up, torn apart and scattered all over the front lawn. This was sufficient circumstantial evidence to justify a fact-finding conclusion beyond a reasonable doubt that defendant

"intentionally . . . damage[d] or destroy[ed] the property of another, having no reasonable ground to believe that he has a right to do so . . . ." (17–A M.R.S.A. § 806)

The accusations of telephone harassment were that on March 7, 1977 and March 9, 1977, defendant telephoned the number of Joyce Michaud and, without disclosing her

identity and with the intent to annoy any person at the Michaud number, refused to say anything and hung up when the telephone was answered.

The evidence showed that for two years the Michauds had received telephone calls between 11:00 p. m. and 6:00 a. m. in which the caller refused to speak when the telephone was answered. On one occasion prior to the incidents of March 1977, however, the caller did speak and said: "You'd better get your . . . damned pigs off the phone, or there'll be more damage done." Jill Michaud recognized the caller's voice as that of defendant.

In March 1977, the Michauds received telephone calls on the 7th, 8th and 9th in which the caller did not speak. The calls on the 8th and 9th were traced by a telephone company employee to a telephone having the number 873–2450 which, the employee testified, he found listed "in the book" to an Aline Cyr.

■ Challenging the sufficiency of this evidence to support convictions on the harassment charges, defendant claims that the testimony as to the listing "in the book" should have been excluded as inadmissible hearsay. The contention is unsound. Rule 803(17) M.R.Evid. provides that

"[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations"

are "not excluded by the hearsay rule." As indicative of the potential scope of this exception to the hearsay rule, the Advisers' Note to Rule 803(17) explains that

"[t]here are decisions from other jurisdictions admitting . . . telephone directories, and the like."

Since it is common knowledge that a telephone book listing is "generally used and relied upon by the public", the telephone listing was not excluded by the hearsay rule for the purposes here involved. Hence, the presiding Justice did not violate the hearsay rule by admitting as evidence the testimony that the harassing telephone calls made on March 8th and 9th, 1977 were traced to the telephone number listed in the telephone book to an Aline Cyr.[1]

■ With the evidence supporting a finding that the calls on March 8th and 9th were made from defendant's telephone, the presiding Justice was justified in concluding that defendant was guilty as charged—that is, that defendant made the telephone calls on March 7th and 9th

". . . without disclosing . . . [her] identity and with intent to annoy, abuse, threaten or harass any person at the called number." (17–A M.R.S.A. § 506)

As to the call on March 9th, the conclusion that it was defendant who made the call was warranted by her legal control of the telephone as well as the evidence of her other acts of harassing the Michauds: the prior threatening telephone call and the subsequent flower garden incident. Although there was no tracing of the March 7th call, the close similarity of that call to the March 8th and 9th calls, each traced to defendant's telephone, and the other (above-described) circumstantial evidence of

1. Although defendant has not raised the issue, there could be a question whether the oral testimony about the contents of the telephone book violated the "best evidence rule", as embodied in Rule 1002, M.R.Evid. As to this, nothing in the record suggests that the testimony as to the listing in the book was inaccurate, and, this being so, if there was a violation of the best evidence rule in this case the error would be harmless. As explained in the Advisers' Note to Rule 1004, M.R.Evid.:

"When it comes to a motion for a new trial or on appeal, an asserted error in admitting secondary evidence may be classed as harmless. The purpose of the best evidence rule is to secure the most reliable information as to the contents of a document when its terms are disputed. The rule is not an end in itself. Consequently if complaining counsel is asked whether there is an actual dispute as to the terms of the writing and he cannot give assurance that such a good faith dispute exists, any deviation from the rule should be harmless error."

identity, justified the finding that defendant had also made the March 7th call.[2]

### 2.

As her only other point of appeal, defendant argues that the presiding Justice deprived defendant of a fair trial by asking numerous questions and by assuming the role of a prosecutor.

■ The record reveals that the presiding Justice asked many questions and developed several lines of testimony critical to the adjudications of guilt. However, since the trial was jury waived and the presiding Justice was the fact-finder, the matter of concern is whether he acted fairly and impartially in discharging that function. *State v. Sampson*, Me., 387 A.2d 213 (1978). Here, there is no showing that the presiding Justice acted other than as a fair and impartial fact-finder.

The entry is:

Appeal denied.

Judgments affirmed.

GODFREY, J., did not sit.

---

**2.** We recognize that evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Such evidence is admissible in certain circumstances, however, for other purposes such as to prove identity, intent or plan. See *State v. Eaton*, Me., 309 A.2d 334 (1973); Advisers' Note to Rule 404(b) M.R.Evid. Although determination of whether the prejudicial impact of such evidence outweighs its probative value ordinarily requires careful analysis, see cases and commentary on Rule 404 set forth in Weinstein & Berger, 2 Weinstein's Evidence (1977), we need not examine whether the evidence was inadmissible in this case. The presiding Justice admitted the evidence and defendant has failed to argue either at trial or in her brief on appeal that the evidence of other wrongs and acts was not admissible on the issue of identity. In reviewing the sufficiency of the evidence, therefore, we may properly consider the probative value of the "other wrongs" evidence on the issue of identity. Cf. *State v. Nason*, Me., 383 A.2d 35 (1978).