2002 ME 28

**STATE of Maine**

v.

**Merle CROSSMAN**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 28, 2002.

Decided: Feb. 19, 2002.

Geoffrey A. Rushlau, Dist. Atty., Eric J. Walker, Asst. Dist. Atty., Belfast, for State.

Julio V. DeSanctis III, Downeast Law Associates, P.A., Orrington, for defendant.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Merle Crossman appeals from a judgment of conviction entered in the Superior Court (Waldo County, *Pierson, J.*) upon a jury verdict finding him guilty of burglary of a dwelling, Class B, 17–A M.R.S.A. § 401 (1983) and theft, Class E, 17–A M.R.S.A. § 353 (1983). Crossman challenges the sufficiency of the evidence in the record to support both charges, and particularly the evidence of entry to support the burglary charge. We find no error and affirm.

## I. BACKGROUND

[¶ 2] Based on the evidence presented at trial, taken in the light most favorable to the State, *see State v. Hayes,* 675 A.2d 106, 109 (Me.1996), the jury could rationally find the following facts: David and Nancy Carpenter reside on Goshen Road in Winterport. Two houses from the Carpenters is a vacant house on which Peoples Heritage Bank had recently foreclosed. The bank had never given anyone permission to enter the property or remove any items from it.

[¶ 3] On the evening of July 7, 1999, David Carpenter left his home to run an errand. On his way past the vacant home, he noticed a black Nissan pickup truck in the driveway. Carpenter knew that no one was currently living in the home.

About ten minutes later, on his way back, Carpenter noticed that the truck was still in the driveway and pulled in behind it to investigate. A woman he did not recognize was standing by the truck; she told Carpenter she was thinking about buying the home. A man Carpenter later recognized as Merle Crossman then came around the corner of the house. He told Carpenter he was thinking about buying the home. Nothing appeared to be out of the ordinary about the house, and Crossman's truck bed was empty at that time. Carpenter, the woman, and Crossman then left the property.

[¶ 4] After Carpenter returned home, he and his wife walked over to the home, a distance of about 250 to 300 feet, with flashlights. On the way, they noticed a dark pickup truck pass them on Goshen Road. When they reached the home, they noticed a blanket next to the driveway with some doors partially covered beneath it. They also noticed that some of the doors on the home were missing, including the front door and some sliding glass doors. The missing doors appeared to be the doors underneath the blanket.

[¶ 5] The Carpenters returned home, but on their way they were passed a second time on Goshen Road by a dark pickup truck. They watched as the truck proceeded slowly in the direction of the vacant home. The Carpenters decided to walk to the home a second time. They got close enough to hear voices in low tones and rustling, and to see the cab of the same black pickup truck that David Carpenter had seen parked in the driveway earlier that day when he had seen Crossman.

[¶ 6] The Carpenters proceeded home again and got into their own truck. When they pulled out onto Goshen Road from their own driveway, they noticed taillights at the end of the road, but recalled that no other vehicle had gone by them. They

pursued the truck, passed it, and pulled across the road in front of it to block the truck from continuing. It was the same black Nissan pickup truck they had seen earlier. The tailgate of the truck was down and the truck bed contained some doors. Nothing was covering the doors.

[¶ 7] David Carpenter recognized the driver of the black Nissan pickup truck as Crossman. When Crossman yelled for Carpenter to move, Carpenter told Crossman that he knew what Crossman had done. Crossman made a U-turn in the road and headed in the other direction. As Crossman turned, two of the three doors in Crossman's truck bed fell into the road, including the front door and one of the sliding glass doors from the home. Carpenter left the doors in the road to pursue Crossman. Crossman pulled over and got out of his truck. He said to Carpenter, "Remember, Carpenter, I know where you live. You ain't seen me." Crossman also stated, "You better forget you saw me."

[¶ 8] Carpenter notified the police of what he had seen. When he and the police returned to the vacant home later that evening, the house appeared to have been ransacked. Both the front door and the sliding glass doors were missing. Other interior doors also appeared to be missing.

[¶ 9] Crossman was indicted by a grand jury on charges of burglary of a dwelling, Class B, 17–A M.R.S.A. § 401, and theft, Class E, 17–A M.R.S.A. § 353. Following a jury trial, the jury returned a verdict of guilty on both charges. The court entered a judgment of conviction on both counts and sentenced Crossman to eighteen months incarceration with all but five months suspended, two years probation, and imposed a restitution requirement of $1053 on the burglary count. On the count of theft, Crossman was sentenced to ninety days. Crossman appeals.

## II. DISCUSSION

[¶ 10] In a sufficiency of the evidence challenge, we view the evidence in the light most favorable to the State to determine if a rational fact-finder could find each element of the crime proven beyond a reasonable doubt. *State v. Turner*, 2001 ME 44, ¶ 6, 766 A.2d 1025, 1027. The fact-finder is also permitted to "draw any reasonable inference that logically flows from the testimony or proved physical facts," to "believe some parts of witness testimony to the exclusion of others," and to "selectively accept or reject testimony and to combine such testimony in any way." *State v. Bartlett*, 661 A.2d 1107, 1108 (Me:1995) (citations omitted). The elements of any crime, including entry, may be proven by circumstantial evidence. *State v. Emerson*, 675 A.2d at 978, 979–80 (Me.1996); *State v. Liberty*, 280 A.2d 805, 807 (Me.1971).

[¶ 11] The elements of burglary are: (1) entering or surreptitiously remaining in a structure; (2) with knowledge that the actor is not licensed or privileged to do so; and (3) with the intent to commit a crime in the structure. 17–A M.R.S.A. § 401(1) (1983); *State v. Coleman*, 452 A.2d 397, 399 (Me.1982). Burglary is a Class B crime if the structure entered is a dwelling place, as in this case. 17–A M.R.S.A. § 401(2)(B) (1983).

[¶ 12] Crossman contends that insufficient evidence exists in the record to support the first element of burglary, entry into the home, because no witness saw him in the house and because the doors he allegedly took were exterior doors that would not require entry to remove. Entry may be proven either with direct evidence, such as an eyewitness who observes the defendant entering the structure or physical evidence proving the defendant was inside the structure, or with circumstantial evidence that indicates the defendant was inside the structure. *State v. Mitchell*, 593 A.2d 1047, 1049 (Me.1991).

> A burglarious entry is accomplished by the intrusion into the building of any part of the body, an arm, a hand, a finger or a foot, or, in some instances, of an instrument, providing the instrument is inserted and utilized as a means of effectuating or attempting to effectuate the theft and not solely as a means of accomplishing the breaking into the building.

*Liberty*, 280 A.2d at 808. Prior cases have found a "breaking and entering" where the defendant merely moved "to a material degree something that barred the way, i.e., either a closed door or a closed window." [1] *State v. Mower*, 275 A.2d 584, 586 (Me. 1971).

[¶ 13] Carpenter testified that he saw Crossman in possession of doors that Carpenter recognized as recently removed from the vacant home. In addition, the jury could have made the logical inference that the hinges of a residential door are located on the inside of a dwelling rather than the outside. Crossman's own testimony indicated that he was experienced in removing doors and that removing a door would require him to "work from both sides of the door." This evidence supports the reasonable inferences that, in his efforts to remove the doors, (1) some part of Crossman's body intruded into the home; (2) Crossman may have inserted an instrument such as a screwdriver, into the home

---

1. The 1975 comments addressing section 401, as part of the Maine Criminal Code, note that the Code removed the "breaking" element which, before 1975, was a prerequisite for conviction on burglary charges. 17–A M.R.S.A. § 401 comment (1975). *See also* Peter G. Ballou, *Commentaries on the Maine Criminal Code: Property Offenses*. 28 Me. L.Rev. 13, 27 (1976).

to complete the theft of the doors; and (3) Crossman moved the doors to a material degree in order to remove them. Any one of these three reasonable inferences is sufficient to support the jury's finding that Crossman entered the vacant home. Therefore, although the State presented no direct evidence that Crossman entered the home, a reasonable inference that he entered the home is supported by the evidence.

■ [¶ 14] Crossman also contends that insufficient evidence exists to support the elements of theft beyond a reasonable doubt. The elements of theft by unauthorized taking or transfer are: (1) obtaining or exercising unauthorized control; (2) over the property of another; and (3) with the intent to deprive the owner of the property. 17–A M.R.S.A. § 353(1) (1983); *State v. Duval,* 666 A.2d 496, 498 (Me. 1995). Theft is a Class E crime if the value of the property taken is less than five hundred dollars. 17–A M.R.S.A. § 362(5) (Supp.2001). Every element of the crime of theft is supported by sufficient evidence in the record.

The entry is:

Judgment affirmed.