2010 ME 85

**STATE of Maine**

v.

**Daniel O. COOK.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 7, 2010.

Decided: Aug. 24, 2010.

Jeremy Pratt, Esq., Camden, ME, for Daniel O. Cook.

Michael E. Povich, District Attorney, Mary N. Kellett, Asst. Dist. Atty., Prosecutorial District No. VII, Ellsworth, ME, for the State of Maine.

Panel: SAUFLEY, C.J., ALEXANDER, LEVY, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Daniel O. Cook appeals from a judgment of conviction entered in the Superior Court (Hancock County, *Cuddy, J.*) for twenty-five total counts: four counts of burglary (Class B), 17–A M.R.S. § 401(1)(A), (B)(4) (2009); four counts of burglary (Class C), 17–A M.R.S. § 401(1)(A) (2009); one count of theft by unauthorized taking or transfer (Class C), 17–A M.R.S. § 353(1)(A), (B)(4) (2009); one count of theft by unauthorized taking or transfer (Class D), 17–A M.R.S. § 353(1)(A), (B)(5) (2009); eleven counts of theft by unauthorized taking or transfer (Class E), 17–A M.R.S. § 353(1)(A) (2009); three counts of criminal mischief (Class D), 17–A M.R.S. § 806(1)(A) (2009); and one count of unlawful possession of a firearm (Class C), 15 M.R.S. § 393(1)(A–1)(1) (2009),[1] following a jury trial. Cook challenges the sufficiency of the evidence for each count of the conviction. We affirm in part and vacate in part.

## I. BACKGROUND

[¶ 2] "Viewed in the light most favorable to the State, the following evidence was admitted at trial." *State v. Cook,* 2010 ME 81, ¶ 2, 2 A.3d 313, 314; *accord State v. Schmidt,* 2008 ME 151, ¶ 2, 957 A.2d 80, 83. In November and December of 2006,

Cook and his father, David Cook,[2] along with his nephew Christopher Cook, and Christopher Lapointe, a friend of Cook's nephew, engaged in a series of burglaries and thefts of seasonal camps in Dedham. During this period, all four lived together in David Cook's home in Dedham, and Lapointe had outstanding warrants in Bangor. The purpose of the spree was to locate and steal copper pipe in order to sell it for scrap metal. The men damaged several doors and windows in the course of the break-ins, stole copper and personal property from the victimized residences, and brought all the stolen property back to the Cook residence. After law enforcement officers came to the Cook residence seeking a suspicious person and inquiring about Lapointe on December 9, 2006, Cook and David Cook dumped the stolen property into a culvert in Ellsworth.

[¶ 3] Lapointe was arrested on his outstanding warrants on December 14, 2006, and became a cooperating witness for the State. The Hancock County Sheriffs Department executed a search warrant at the Cook residence on February 13, 2007. The deputies found a locked gun cabinet along with the key in Cook's bedroom. The guns inside the cabinet were in working order, and Cook had been seen handling the guns.

[¶ 4] A grand jury returned an indictment on June 5, 2007, charging Cook with thirty-two total counts against fifteen separate victims: nine counts of burglary (Class B), 17–A M.R.S. § 401(1)(A), (B)(4); five counts of burglary (Class C), 17–A M.R.S. § 401(1)(A); two counts of theft by unauthorized taking or transfer (Class C),

---

**1.** Title 15 M.R.S. § 393(1)(A–1)(1) was amended in ways that are not relevant to this appeal between Cook's indictment and trial. *See* P.L. 2007, ch. 194, § 1 (effective Sept. 20, 2007) (codified at 15 M.R.S. § 393(1)(A–1)(1)(2009)).

**2.** Recently we also decided the appeal of David O. Cook, Cook's father and co-defendant, *State v. Cook,* 2010 ME 81, 2 A.2d 313.

17–A M.R.S. § 353(1)(A), (B)(4); one count of theft by unauthorized taking or transfer (Class D), 17–A M.R.S. § 353(1)(A), (B)(5); eleven counts of theft by unauthorized taking or transfer (Class E), 17–A M.R.S. § 353(1)(A); three counts of criminal mischief (Class D), 17–A M.R.S. § 806(1)(A); and one count of unlawful possession of a firearm (Class C), 15 M.R.S. § 393(1)(A–1)(1). Pursuant to M.R.Crim. P. 8(b), the State filed a notice of joinder for Cook and David Cook on the same day.

[¶ 5] Lapointe pleaded guilty to charges arising from the camp break-ins, and testified at trial in December 2007. At trial, Cook stipulated that he "was convicted on June 22, 2001 in Penobscot Superior Court in Bangor, Maine, in Docket No. CR–00–685 of unlawful trafficking in scheduled drugs, a crime under the laws of Maine punishable by imprisonment . . . for one year or more." At the close of the State's case, Cook moved for a judgment of acquittal based on insufficient evidence, which the court denied. The court instructed the jury on both principal and accomplice liability,[3] and the jury returned a guilty verdict on all counts of the indictment except for five Class B burglaries, one Class C burglary, and one Class C theft by unauthorized taking or transfer.

[¶ 6] The court entered a judgment on the verdict and sentenced Cook to three years in prison, suspended all but two years, and imposed two years of probation on Cook's eight burglary convictions and one Class C theft by unauthorized taking conviction. The court sentenced Cook to one year in jail on the count of unlawful possession of a firearm and ninety days in jail for the remaining fifteen Class D and Class E convictions. All sentences were to be served concurrently. The court also ordered restitution in the amount of $20,027.50, jointly and severally with David Cook, to be paid through probation. Cook's appeal is timely pursuant to 15 M.R.S. § 2115 (2009) and M.R.App. P. 2.[4]

## II. DISCUSSION

[¶ 7] Cook's sole challenge on appeal is the sufficiency of the evidence supporting each of his convictions. "Upon a claim of insufficient evidence, we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally find every element of the offense beyond a reasonable doubt." *State v. Milliken,* 2010 ME 1, ¶ 19, 985 A.2d 1152, 1158 (quotation marks omitted); *accord State v. Smen,* 2006 ME 40, ¶ 7, 895 A.2d 319, 321. As the fact-finder, the jury's "[d]eterminations of the weight and credibility to be afforded the evidence are within [its] exclusive province," and it "is permitted to draw all reasonable inferences from the evidence." *Schmidt,* 2008 ME 151, ¶ 19, 957 A.2d at 86 (quotation marks omitted); *accord State v. Allen,* 2006 ME 20, ¶ 26, 892 A.2d 447, 455. Evi-

---

**3.** Title 17–A M.R.S. § 57(3)(A) (2009) provides:

> **3.** A person is an accomplice of another person in the commission of the crime if:
> **A.** With the intent of promoting or facilitating the commission of the crime, the person solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a

reasonably foreseeable consequence of the person's conduct.

The statute was amended in ways not relevant to this appeal in the period of time between the commission of the crimes and trial. *See* P.L. 2007, ch. 173, § 13 (effective Sept. 20, 2007).

**4.** Title 15 M.R.S. § 2115 was amended during the pendency of this appeal, but not in any way that affects the present case. *See* P.L. 2007, ch. 475, § 5 (effective June 30, 2008) (codified at 15 M.R.S. § 2115(2009)).

dence is sufficient to support a conviction when the facts presented are proved beyond a reasonable doubt; to prove facts beyond a reasonable doubt, the jury must be convinced of the defendant's guilt by having a conscientious belief that the charged offense is almost certainly true. *See State v. Brown*, 2000 ME 25, ¶ 15, 757 A.2d 768, 772.

[¶ 8] The jury convicted Cook on twenty-five counts of four crimes in varying degrees of severity: burglary (Class B and C), theft by unauthorized taking or transfer (Class C, D, and E), criminal mischief (Class D), and unlawful possession of a firearm (Class C). Cook's arguments regarding the sufficiency of the evidence on Counts 1, 2, 6, 8, 12, 14 through 16, 18, 21 through 23, 26 through 29, 31, and 32 are unpersuasive and merit no further discussion. Viewed in the light most favorable to the State, a rational fact-finder could have found each element of those eighteen offenses beyond a reasonable doubt based on the evidence presented and the reasonable inferences that may drawn from that evidence. *See Milliken*, 2010 ME 1, ¶ 19, 985 A.2d at 1158; *Schmidt*, 2008 ME 151, ¶ 19, 957 A.2d at 86. We affirm those eighteen convictions. The remaining convictions warrant further analysis. We begin with a discussion of the elements that the State was required to prove for each crime and then examine the sufficiency of the evidence for Counts 5, 10, 13, 19, 24, 25, and 30.

### A.  State's Burden of Proof

[¶ 9] Burglary to a structure is a Class C offense. 17–A M.R.S. § 401(1)(A). To prove burglary to a structure, the State must show that the defendant entered or surreptitiously remained in a structure knowing that he was "not licensed or privileged to do so, with the intent to commit a crime therein." *Id.; accord State v. Cross-*

*man*, 2002 ME 28, ¶ 11, 790 A.2d 603, 606. A structure is "a building or other place designed to provide protection for persons or property against weather or intrusion." 17–A M.R.S. § 2(24) (2009).

[¶ 10] To prove theft by unauthorized taking or transfer, the State must prove the defendant "(1) obtained or exercised unauthorized control (2) over the property of another (3) with [the] intent to deprive the owner of that property." *Schmidt*, 2008 ME 151, ¶ 20, 957 A.2d at 86 (quotation marks omitted); *accord* 17–A M.R.S. § 353(1)(A). The basic offense of theft by unauthorized taking or transfer is a Class E offense. 17–A M.R.S. § 353(1)(A). When the State proves that the value of the property taken is "more than $500 but not more than $1,000" at the time of the offense, theft by unauthorized taking is a Class D crime. 17–A M.R.S. § 353(1)(B)(5).

[¶ 11] Criminal mischief is a Class D offense. 17–A M.R.S. § 806(2) (2009). To support a conviction for criminal mischief, the State must prove that the defendant "intentionally, knowingly, or recklessly ... [d]amage[d] or destroy[ed] the property of another, having no reasonable grounds to believe that the [defendant had] a right to do so." 17–A M.R.S. § 806(1)(A); *accord State v. Patterson*, 2004 ME 79, ¶ 10, 851 A.2d 521, 523.

### B.  Sufficiency of the Evidence

1.  Counts 5 and 30—Burglary (Class C)

[¶ 12] Cook's convictions for Counts 5 and 30 are for the burglaries at the Zimmerman and Delucia camps. The evidence is sufficient to support the jury's finding, beyond a reasonable doubt, that Lapointe and Christopher Cook, without authorization, crawled *under* both camps with the intent to steal the copper pipe

underneath each location. Cook assisted Lapointe and Christopher Cook in the commission of these crimes by picking them up in a vehicle after each break-in. *See* 17–A M.R.S. § 57(3) (2009); *State v. Nguyen,* 2010 ME 14, ¶ 15, 989 A.2d 712, 715 ("Accomplice liability may be found in any conduct promoting or facilitating, however slightly, the commission of the crime." (quotation marks omitted)). Although Cook contends that he was merely present at each scene, the jury could reasonably infer that Cook knowingly aided Christopher Cook and Lapointe. Further, the intent of all three men may be inferred from the evidence. The evidence is sufficient to support Cook's convictions for burglary on a theory of accomplice liability only if the area underneath the camp is in fact part of the "structure" of the camp. *See* 17–A M.R.S. § 2(24).

[¶ 13] When we have previously examined whether an area is a structure for purposes of the burglary statute, we have only dealt with areas designed to accommodate a standing adult in either a building or storage area. *See, e.g., State v. Miller,* 626 A.2d 343, 344 (Me.1993) (concluding that an office with a locked door within a building qualifies as a structure under the statute); *State v. Hillman,* 565 A.2d 1012, 1013 (Me.1989) (same); *State v. Wing,* 426 A.2d 1375, 1376–77 (Me.1981) (affirming the defendant's conviction for burglary of a storage shed adjacent to a restaurant as part of the restaurant's structure); *see also* 12A C.J.S. *Burglary* § 27 (1980) (stating that a structure with "walls on all sides and a roof [that] is large enough to accommodate an erect adult . . . is ordinarily regarded as a building subject to burglary"). The offense of burglary, however, "is one primarily against the security of habitation," and encompasses entries into a structure that is purposefully designed to keep "persons [out] whose entrance is not desired." *State v. Cookson,* 293 A.2d 780, 784–85 (Me.1972). The statutory definition of a structure reinforces this principle. A structure is "a building or other place designed to provide protection for persons or property against weather or intrusion." 17–A M.R.S. § 2(24). The statute thus protects not only a traditional building; the statute also protects any "place designed to provide protection for persons or property against weather or intrusion." *Id.*

[¶ 14] At trial, Deputy Jeffrey McFarland of the Hancock County Sheriff's Department testified that the space underneath both camps had been closed or secured against the weather by skirting or lattice and that the latticework on the Zimmerman camp had been cut in order to gain access to the copper pipe. Because the testimony established that the space under each camp was designed to protect the area from weather, we conclude that the area underneath the camp is part of the structure. *Id; cf. Iowa v. Gallimore,* No. 8–208/06–1408, 2008 WL 1887306, at *2–3, 2008 Iowa App. LEXIS 263, at *5–8 (Iowa Ct.App. Apr. 30, 2008) (concluding that the area under a trailer used for storage was part of the occupied structure and the defendant found hiding there could be convicted of the burglary of the trailer). We therefore affirm Cook's convictions on Counts 5 and 30 for burglary as an accomplice. *See Nguyen,* 2010 ME 14, ¶ 15, 989 A.2d at 715; *Wing,* 426 A.2d at 1376–77.

2. Count 10—Theft by Unauthorized Taking or Transfer (Class D)

[¶ 15] Cook's conviction for Count 10 is based on allegations that Cook exercised unauthorized control over a Bose stereo taken from Lunn's camp, which was valued at approximately $1000 at the time

it was stolen. At trial, Lapointe testified that he had seen a Bose stereo that matched the description of the stolen stereo in a common area of the Cook residence. The State, however, did not present any evidence that Cook ever used the stereo, and the stereo was neither recovered nor presented at trial. Although the jury could reasonably infer that the Bose stereo in the Cook residence was in fact Lunn's stereo, the stereo's mere presence in the residence does not establish that Cook exercised the requisite control over the stereo. Absent evidence of control over the Bose stereo, the evidence presented is insufficient to support the jury's verdict on this count and we vacate the conviction. *See State v. Parsons*, 2001 ME 85, ¶ 12, 773 A.2d 1034, 1037; *State v. Ketchum*, 1997 ME 93, ¶¶ 13–14, 694 A.2d 916, 918–19; *State v. DePhilippo*, 628 A.2d 1057, 1060 (Me.1993).

3. Counts 13 and 19—Criminal Mischief (Class D)

▉▉▉▉ [¶ 16] Cook's convictions on Counts 13 and 19 stem from the State's allegation that Cook intentionally damaged the Dooey and Klausmeier camps, respectively, without the right to do so. The only evidence the State presented to connect Cook to the damage at the Klausmeier camp was that a backpack taken from the camp was seen in the Cook residence and later found in the culvert in which Cook and David Cook dumped various stolen items. Similarly, the only evidence the State presented to tie Cook to the damage at the Dooey residence was that property taken from the camp was recovered from the same culvert.[5] Although circumstan-

tial evidence can support a conviction for criminal mischief, *see State v. Cyr*, 389 A.2d 834, 835 (Me.1978), the evidence connecting Cook to these crimes is too tenuous for a rational fact-finder to determine that it is almost certainly true that Cook intentionally, knowingly, or recklessly damaged or destroyed property at these camps, *see Patterson*, 2004 ME 79, ¶ 10, 851 A.2d at 523; *Brown*, 2000 ME 25, ¶¶ 15–16, 757 A.2d at 772. We therefore vacate Cook's convictions for Counts 13 and 19.

4. Counts 24 and 25—Burglary (Class C) and Theft by Unauthorized Taking or Transfer (Class E)

▉▉▉ [¶ 17] Cook's convictions for burglary and theft at the Brookings camp are based on allegations that Cook entered the camp without authorization and stole copper pipe from underneath the residence. At trial, Brookings testified that no one had permission to go under the camp and steal the copper pipe located there. The only other direct evidence that the State presented regarding these crimes was the testimony of Lapointe.[6] Lapointe testified that he committed these crimes with Christopher Cook, and that David Cook picked them up after the break-in.

[¶ 18] The State contends that because Cook orchestrated, participated in, and profited from the string of burglaries, the evidence is sufficient to support these convictions. The State, however, presented no evidence that Cook was present at Brooking's camp during the commission of these crimes, or any evidence that Cook assisted in these particular acts. "Although we view the evidence in the light

---

5. The jury returned a verdict of not guilty on the burglaries of both the Dooey and Klausmeier camps, and there was no testimony from Lapointe or any other witness that placed Cook on the premises of either camp.

6. Several witnesses testified to the fact of the burglary, but Lapointe was the only witness that could connect either Cook or his codefendant to the crimes.

most favorable to the State," *State v. Nugent*, 2007 ME 44, ¶ 16, 917 A.2d 127, 131, without any evidence of Cook's involvement in these particular crimes, a factfinder could not rationally find beyond a reasonable doubt that Cook either committed or assisted in the burglary and theft of the Brookings camp, *see Schmidt*, 2008 ME 151, ¶ 19, 957 A.2d at 86; *Brown*, 2000 ME 25, ¶¶ 15–16, 757 A.2d at 772. We therefore vacate Cook's convictions for Counts 24 and 25.[7]

### III. CONCLUSION

[¶ 19] In sum, we vacate five of Cook's twenty-five convictions. We also vacate the order of restitution, which was ordered jointly and severally with David Cook. The sentencing court may only order restitution for the amount of the victim's actual economic loss resulting from the specific crime for which a defendant has been convicted. *State v. McCray*, 1999 ME 151, ¶ 7, 740 A.2d 38, 40. Of the $20,027.50 Cook was ordered to pay in restitution, $4527.50 was payable to the owner of the Cross camp for the loss she sustained from the burglary of both her house and garage. As Cook has only been convicted of the burglary of her home, the court should reexamine the loss attributable to each crime and apportion the restitution accordingly between the co-defendants as necessary.

The entry is:

Judgment of conviction as to Counts 1, 2, 5, 6, 8, 12, 14 through 16, 18, 21 through 23, and 26 through 32 affirmed. Judgment of conviction as to Counts 10, 13, 19, 24, and 25 vacated. Order of restitution va-

cated. Remanded to the Superior Court for resentencing consistent with this opinion.

---

7. We note that the evidence presented on Counts 24 and 25 was substantially similar to the evidence the State presented on Counts 26 and 27, the burglary and theft of the Folsom camp. Because, however, Lapointe's testimony placed Cook at the scene of the Folsom camp immediately after the burglary and theft of that camp, the jury could reasonably infer that he had taken part in the crimes, and the evidence is sufficient to support Cook's convictions on those counts.