MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2013 ME 5
Docket:        Pen-12-183
Submitted
 On Briefs:    November 28, 2012
Decided:       January 8, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

## STATE OF MAINE

v.

## MATTHEW REED

JABAR, J.

[¶1]   Matthew Reed appeals from a judgment of conviction of theft by unauthorized taking or transfer (Class C), 17-A M.R.S. § 353(1)(B)(4) (2012), and criminal mischief (Class D), 17-A M.R.S. § 806(1)(A), (2) (2012), entered by the trial court (*Campbell, J.*) after a jury trial.   On appeal, Reed argues that the evidence presented was insufficient to support the jury's findings that Reed obtained and intended to deprive the State of possession of property with a value greater than $1,000, and separately, that he intentionally, knowingly, or recklessly damaged or destroyed property of the State without reasonable grounds to do so. Finding ample evidence in the record to support the jury's verdict, we affirm the judgment of conviction.

2

## I. BACKGROUND

[¶2] In the summer of 2011, the Maine Forest Service discovered evidence that someone was entering state-owned property and stealing parts from vehicles parked there. The property, known as the "federal excess lot," is located in Greenbush, managed by the Maine Forest Service, and used to house specialized vehicles that the State obtains from the federal government.[1] The lot is in a wooded area and secured by a gate with signs warning that no trespassing is permitted and that trespassers will be prosecuted.

[¶3] On the morning of June 24, 2011, rangers with the Maine Forest Service began investigating the thefts occurring on the federal excess lot. The rangers noticed that someone had recently cut trees on the border of the lot in an attempt to clear a trail between the lot and an adjacent field. After questioning citizens in a nearby town, the rangers returned to the lot and heard trees being chopped down near where they had discovered the trail. The rangers also found tire tracks on a neighboring lot, which they believed indicated recent activity, and heard people talking near the chopping noises. In light of these developments, the rangers contacted the Maine State Police.

---

[1] The lot contains "five[-]ton vehicles, fire trucks [and] smaller items." Municipalities can contact the Forest Service and borrow the trucks when needed.

[¶4]  At about 4:00 p.m., Maine State Trooper Roderick Charette responded to the federal excess lot.  A ranger led Charette to the trail, which had tree stumps chopped low and was cut just wide enough to allow a vehicle to access the lot from the adjacent field.  While examining the trail, Charette and the ranger heard a vehicle start and voices coming from the lot.  Charette and the ranger hid in the woods and waited as a truck began to come down the trail.  Once the body of the truck was fully in the trail, Charette noticed that the truck was towing a large, red surplus truck.  The surplus truck was a 1977 Dodge Power Wagon owned by the State of Maine.  Trooper Charette stepped out of the woods and stopped the vehicle.

[¶5]  Reed, who was the only occupant in the vehicle, complied with Charette's request to stop and was arrested.  Reed had various tools in the bed of his truck, including two hatchets and a hacksaw.  After Reed was informed of his *Miranda* rights and indicated that he understood those rights, Charette began asking questions about Reed's motive for stealing the truck.  Reed indicated that he was working with one other person and that they planned to remove the axle of the Dodge Power Wagon to repair another truck Reed owned.

[¶6]  On February 29, 2012, Reed was indicted on the following charges: theft by unauthorized taking or transfer of property with a value of at least $1,000 but less than $10,000 (Class C), 17-A M.R.S. § 353(1)(B)(4); theft by unauthorized

4

taking or transfer of property with a value of at least $500 but less than $1,000 (Class D), 17-A M.R.S. § 353(1)(B)(5) (2012); criminal mischief (Class D), 17-A M.R.S. § 806(1)(A), (2); and criminal trespass (Class E), 17-A M.R.S. § 402(1)(C) (2012). A daylong jury trial was held on March 23, 2012.

[¶7] At trial, Reed elected to testify and offered an explanation for why he was towing the vehicle. Reed explained that he was trying to "kill some time" when he came across a field he thought would be good for off-roading. Reed entered the field in his truck and came upon a trail through the woods. Reed exited his truck, walked up the trail, and saw the Dodge Power Wagon at the end of the trail. Reed testified that, rather than go back through the field the way he came, he thought it would be more efficient to follow the trail, tow the Dodge Power Wagon out of the way, and find an easier way back to a main road.[2] According to Reed, he found the hatchets and hacksaw on the trail near the truck, and as soon as he towed the truck a distance sufficient to allow him to get through the trail he was stopped by Charette. Reed attributed any chopping sounds the rangers may have heard to his truck changing gears and testified that his comments to Charette about removing the Power Wagon's axle were taken out of context because he was simply referring to another truck he owned.

---

[2] On cross-examination, Reed stated that he was low on fuel at the time but still thought it would be best to tow the truck and find another way out rather than return the way he came.

[¶8] Adolph Holmes, the Maine Forest Service official in charge of the property at the federal excess lot, testified as to the value of the Dodge Power Wagon. Holmes testified that the vehicle was worth $7,995 when originally acquired in 1977, it was in "repairable condition" in 2011, and he had sold a similar model in similar condition for $1,250 within the past two-and-a-half years. The State also introduced photographs of the Dodge Power Wagon for the jury to consider in determining the truck's value. The jury found Reed guilty of theft by unauthorized taking or transfer of property with a value of at least $1,000 but less than $10,000, and criminal mischief, but it found him not guilty of criminal trespassing. Reed was sentenced to ninety days' imprisonment on each of the two charges, to be served concurrently, and that sentence was stayed pending this timely appeal.

## II. DISCUSSION

[¶9] "When a criminal defendant claims on appeal that the evidence was insufficient to support his conviction, we view the evidence in the light most favorable to the State in determining whether the fact-finder could rationally have found each element of the offense beyond a reasonable doubt." *State v. Jones*, 2012 ME 88, ¶ 7, 46 A.3d 1125.

6

A.    Theft by Unauthorized Taking or Transfer

[¶10]   The elements of theft by unauthorized taking or transfer are (1) a person obtains or exercises unauthorized control (2) over the property of another (3) with the intent to deprive the other person of the property.  *See* 17-A M.R.S. § 353(1)(A) (2012); *State v. Cook*, 2010 ME 85, ¶ 10, 2 A.3d 333.  It is a Class C offense if the State proves beyond a reasonable doubt (4) that the value of the property is greater than $1,000 but less than $10,000.  17-A M.R.S. § 353(1)(B)(4).  "In relation to property, [to 'obtain' means] to bring about . . . a transfer of possession or of some other legally recognized interest in property, whether to the obtainer or another."  17-A M.R.S. § 352(2)(A) (2012).  "Except in certain defined circumstances not present here, value means the market value of the property . . . at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property . . . within a reasonable time after the crime." *State v. Bruzzese*, 2009 ME 61, ¶ 10, 974 A.2d 311 (quotation marks omitted).

[¶11]   Viewing the evidence in the light most favorable to the State, the jury rationally could have found that, by hooking the Dodge Power Wagon up to his truck and towing it a distance, Reed obtained and intended to deprive the State of possession of the Dodge Power Wagon.  *See State v. Atkinson*, 458 A.2d 1200, 1205 (Me. 1983) (affirming a conviction for theft by unauthorized taking or transfer where the jury rationally could have found that the defendant intended to

steal a tractor when the evidenced showed that he entered a building without permission and used the tractor without authorization). Although Reed argues that he did not obtain or intend to deprive the State of possession of the property because he only moved the vehicle a small distance to make room to get his truck through the trail, the jury was not bound to accept as true Reed's testimony about his motivations. Rather than accept Reed's stated reasons for his actions, the jury found Reed guilty of theft by unauthorized taking. The evidence presented at trial was sufficient to permit the jury to find that Reed obtained or exercised unauthorized control over the property of the State with the intent to deprive the State of possession of that property. *See id.* ("The flaw in defendant's argument is that there was nothing to prevent the jury from finding he had the intent . . . not merely to use the [property] but to take it and deprive the owner of it.").

[¶12] With regard to the value of the property, based on the testimony of the Maine Forest Service official in charge of the federal excess lot and the pictures admitted at trial, the jury rationally could have found that the value of the Dodge Power Wagon was greater than $1,000 and less than $10,000. *See State v. Thibeault*, 390 A.2d 1095, 1103 n.6 (Me. 1978) (discussing evidence to be considered by a jury in determining the value of property when value is an element of the offense). Therefore, a jury rationally could have found beyond a reasonable doubt that Reed obtained property of the State, with the intent to deprive the State

of possession of that property, and that the property had a value of more than $1,000 and less than $10,000. *See* 17-A M.R.S. § 353(1)(A), (1)(B)(4).

B.    Criminal Mischief

[¶13]   As applicable to this case, the elements of criminal mischief are (1) intentionally, knowingly, or recklessly (2) damaging or destroying the property of another (3) without reasonable grounds to believe the actor has a right to do so. 17-A M.R.S. § 806(1)(A); *see Cook*, 2010 ME 85, ¶ 11, 2 A.3d 333. We will overturn a criminal mischief conviction if the evidence is "too tenuous for a rational fact-finder to determine that it is almost certainly true that [the defendant] intentionally, knowingly, or recklessly damaged or destroyed property." *See Cook*, 2010 ME 85, ¶ 16, 2 A.3d 333. However, "[t]he law is well established that circumstantial evidence is no less conclusive than direct evidence in supporting a conviction," *State v. Work*, 603 A.2d 464, 465 (Me. 1991), and "circumstantial evidence can support a conviction for criminal mischief," *Cook*, 2010 ME 85, ¶ 16, 2 A.3d 333 (citing *State v. Cyr*, 389 A.2d 834, 835 (Me. 1978)).

[¶14]   In this instance, the State argued that Reed committed criminal mischief by chopping down trees owned by the Maine Forest Service in order to clear a trail into the federal excess lot. In support of this argument, the State presented evidence that Maine Forest Rangers found freshly cut trees on the morning that Reed was arrested, heard chopping noises coming from the area

where Reed was eventually discovered, caught Reed traveling on the freshly cut trail through the woods, and found tools in the back of Reed's truck that could have been used to cut the trees. Based upon this evidence, a jury rationally could have found beyond a reasonable doubt that Reed knowingly or intentionally damaged property of the State without reasonable grounds to believe he had a right to do so. *See Cyr*, 389 A.2d at 835 (finding circumstantial evidence that the defendant was in the area where a flower bed was destroyed at the time when it was destroyed and with a tool that could be used to destroy it sufficient to support a criminal mischief conviction beyond a reasonable doubt).

[¶15] In conclusion, viewing the evidence in the light most favorable to the State, *see Cook*, 2010 ME 85, ¶ 7, 2 A.3d 333, the evidence was sufficient to support the jury's findings that Reed obtained and intended to deprive the State of possession of property with a value greater than $1,000, *see Atkinson*, 458 A.2d at 1205, and separately, that he intentionally, knowingly, or recklessly damaged or destroyed property of the State without reasonable grounds to do so. *See Cyr*, 389 A.2d at 835. Therefore, the jury rationally could have found every element of the offenses beyond a reasonable doubt. *See Cook*, 2010 ME 85, ¶ 7, 2 A.3d 333.

The entry is:

Judgment affirmed.

**On the briefs:**

Joseph P. Belisle, Esq., Bangor, for appellant Matthew Reed

R. Christopher Almy, District Attorney, and Tracy Collins Lacher, Asst. Dist. Atty., Bangor, for appellee State of Maine

Bangor Unified Criminal Docket docket number CR-2011-2373
FOR CLERK REFERENCE ONLY