2014 ME 83

STATE of Maine

v.

Erving M. JOHNSON.

Docket No. Sag–13–433.

Supreme Judicial Court of Maine.

Submitted on Briefs: April 29, 2014.

Decided: June 24, 2014.

Jeffrey S. Dolley, Esq., Dolley Law Firm, LLC, Lewiston, on the briefs, for the appellant Erving M. Johnson.

Geoffrey A. Rushlau, District Attorney, and Patricia A. Mador, Asst. Dist. Atty., Bath, on the briefs, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] Erving M. Johnson appeals from a judgment of conviction of failing to provide his correct name, address, and date of birth (Class E), 17–A M.R.S. § 15–A(2) (2013), possession or distribution of dangerous knives (Class D), 17–A M.R.S. § 1055(1), (2) (2013), and refusing to submit to arrest or detention (Class D), 17–A M.R.S. § 751–B(1)(B) (2013), entered by the court (Horton, J.) following a jury-waived trial. Johnson contends that the court violated his Confrontation Clause rights at a suppression hearing by admitting certain testimony of police officers. Johnson also challenges the sufficiency of the evidence supporting his conviction of failing to give his correct name, address, and date of birth. Because the police officers' testimony at the suppression hearing was not offered for the truth of the matter asserted and therefore was not hearsay, we conclude that Johnson's Confrontation Clause rights were not implicated. However, we vacate Johnson's conviction of failing to give his correct name, address, and date of birth because the evidence presented at trial was insufficient to sustain the conviction.

## I. BACKGROUND

[¶ 2] The following evidence was admitted at trial, and we view it in the light most favorable to the State. See State v. Cook, 2010 ME 85, ¶¶ 2, 7, 2 A.3d 333. In the early morning of February 17, 2013, several Bath Police Department officers were dispatched to the Riverside Sports Pub in response to reports of an alterca-tion. Officer Michael Lever was the first to arrive at the scene. Lever entered the bar, found an unresponsive man on the floor, and called for an ambulance. After speaking with two bouncers who had witnessed the brief altercation, Lever reported to the other officers via radio that "two black males" may have been involved and that he had seen two men matching that description outside the bar when he first arrived. One of the bouncers also told Lever that the injured party had instigated the altercation.

[¶ 3] Officer Jason Aucoin was the next to arrive and immediately saw two men matching Lever's description standing outside the entrance to the bar. One of the men was heavyset, and the other was slender. Aucoin approached the men and tried to speak with them, but both men ignored him. After repeated attempts by Aucoin to get the men's attention, the heavyset man handed Aucoin his ID and began telling him what had happened in the bar. Aucoin asked the men if they were together, to which the heavyset man replied in the negative. The slender man continued to ignore Aucoin. While these events were occurring, Lever exited the bar and told the other officers that the injured individual did not want to pursue any complaint against the two men.

[¶ 4] Officer Garrett Olson soon arrived at the scene and asked the slender man for his name and date of birth. The man was generally uncooperative, but said that his name was Joseph Freeman, that his date of birth was November 4, 1987, and that he did not have an ID with him. The officers determined that there was no individual matching that description in the State of Maine system.[1] The man continued to evade the officers' questions about name.

1. The record does not indicate which system or database the officers used to verify the

his identity and increasingly avoided eye contact. In addition, one of the bouncers told the police officers that the man had presented an ID to gain entry to the bar.

[¶ 5] By this point, Aucoin had become increasingly nervous because the man continued to avoid eye contact, appeared to have falsely identified himself, and seemed to be hiding something. Aucoin therefore conducted an "officer safety pat down" of the man. Aucoin found a folding knife in the man's jacket pocket and a Maine driver's license inside his pant leg. The name on the driver's license was Erving Johnson, and the photograph on the license resembled the man. The license also included an address and date of birth. Aucoin asked the man to recite the information on the license in order to confirm that he was the individual described on it. Aucoin testified that Johnson responded, "Look at it for yourself." Olson testified that Johnson told Aucoin, "[Y]ou're looking at my ID. Read it yourself." Aucoin secured the man in handcuffs, which he resisted, and repeatedly ordered the man to verify the information on the ID. When the man still refused, officers detained him until they could verify his identity. The man was later identified as Erving M. Johnson.

[¶ 6] On February 25, 2013, Johnson was charged by complaint with failing to provide his correct name, address, and date of birth (Class E), 17–A M.R.S. § 15–A(2), possession or distribution of dangerous knives (Class D), 17–A M.R.S. § 1055(1), (2), refusing to submit to arrest or detention (Class D), 17–A M.R.S. § 751–B(1)(B), and unlawful use of a license (Class E), 29–A M.R.S. § 2102(1–A)

(2013). Johnson entered a plea of not guilty.

[¶ 7] In May of 2013, Johnson filed a motion to suppress the evidence obtained during Aucoin's pat-down. The court (*Sparaco, J.*) held a hearing on the motion at which the State presented the testimony of Aucoin and Olson. When the officers testified regarding the information they had received from Lever over the radio before arriving at the bar, Johnson objected on hearsay grounds. The court overruled the objections. On July 19, 2013, the court entered an order denying Johnson's motion to suppress because the officers had a reasonable articulable suspicion that Johnson had been involved in an assault. The case was then transferred to the Superior Court and a jury-waived trial was held in September 2013. Following the State's presentation of its case-in-chief, the court (*Horton, J.*) granted Johnson's motion for judgment of acquittal as to the count of unlawful use of a license. After the conclusion of the trial, the court entered a judgment finding Johnson guilty of the remaining three counts and sentenced him to four days in the Sagadahoc County Jail. Johnson timely appealed.

## II. DISCUSSION

### A. Confrontation Clause

 [¶ 8] Johnson first contends that the admission of testimony from Aucoin and Olson at the suppression hearing regarding the information they received from Lever violated Johnson's rights under the Confrontation Clause. *See* U.S. Const. amend. VI; Me. Const. art. I, § 6.[2] We review the application of the Confrontation Clause de novo. *See State v.*

**2.** The Sixth Amendment of the United States Constitution applies to the states through the Fourteenth Amendment. *See Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). We look to federal jurisprudence

in interpreting the United States' and Maine's confrontation clauses. *See, e.g., State v. Mangos,* 2008 ME 150, ¶¶ 9–13, 957 A.2d 89; *State v. Hassapelis,* 620 A.2d 288, 291–94 (Me.1993).

*Woodbury*, 2011 ME 25, ¶ 2, 13 A.3d 1204. Because Johnson failed to make a Confrontation Clause-based objection to the officers' testimony at the suppression hearing, we review the admission of the testimony for obvious error.[3] *See State v. Richardson*, 593 A.2d 218, 219 (Me.1991); *State v. Mitchell*, 390 A.2d 495, 499 (Me. 1978).

[¶ 9] We have not previously determined whether the Confrontation Clause applies to statements made at pretrial hearings such as suppression hearings. We need not decide the issue here, however, because the testimony presented in this case did not implicate the Confrontation Clause. The Confrontation Clause applies only to statements that are (1) hearsay and (2) testimonial. *State v. Tayman*, 2008 ME 177, ¶ 12, 960 A.2d 1151. Lever's statements via radio to Aucoin and Olson—that two black men had possibly been involved in an altercation and that he had seen two black men waiting outside the entrance to the bar—were not hearsay because they were not offered to establish that Lever had actually seen the men, but to demonstrate that the officers had articulable suspicion for stopping and ultimately searching Johnson. *See* M.R. Evid. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *State v. Vaughan*, 2009 ME 63, ¶¶ 6–14, 974 A.2d 930; *State v. Poole*, 551 A.2d 108, 110 (Me.1988) ("[A] state-

ment . . . is not hearsay if it is introduced as evidence of probable cause or an articulable suspicion and not for the truth of the matter asserted.").[4] Because the officers' testimony was not hearsay and therefore did not implicate the Confrontation Clause, the court committed no error in admitting it.

### B. Sufficiency of the Evidence

[¶ 10] Johnson next contends that the evidence does not support his conviction for failing to give his correct name, address, and date of birth pursuant to 17–A M.R.S. § 15–A(2). "In reviewing a challenge to the sufficiency of the evidence in a criminal matter, we consider the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *State v. Smen*, 2006 ME 40, ¶ 7, 895 A.2d 319 (quotation marks omitted). In order to convict Johnson of failing to give his correct name, address, and date of birth, the court must have found beyond a reasonable doubt that Johnson (1) intentionally failed or refused (2) to provide reasonably credible evidence of his correct name, address, or date of birth (3) to a law enforcement officer who had probable cause to believe that Johnson had committed or was committing a crime other than one listed under 17–A M.R.S. § 15(1)(A) (2013), and (4) persisted in the failure or refusal after having been informed by the officer of the provisions of 17–A M.R.S. § 15–A(2).[5]

---

3. Johnson's hearsay objections to Aucoin's and Olson's testimony were insufficient to preserve his Confrontation Clause objections. *See United States v. Baker*, 432 F.3d 1189, 1206 n. 12 (11th Cir.2005).

4. Only hearsay testimony is subject to the Confrontation Clause's protections because "[t]he Clause . . . does not bar the use of testimonial statements for purposes *other* than

establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (emphasis added); *see also State v. Roberts*, 2008 ME 112, ¶ 34, 951 A.2d 803.

5. Title 17–A M.R.S. § 15–A(2) (2013) provides in full:

Any person who a law enforcement officer has probable cause to believe has commit-

[¶ 11] We first consider whether the elements of the offense were met during the period of time when police officers were attempting to identify Johnson, before Aucoin conducted the pat-down and discovered Johnson's driver's license and knife. We conclude that they were not. The evidence presented at trial did not establish beyond a reasonable doubt that, before searching Johnson, the police had probable cause to believe that Johnson had committed a crime. "Probable cause to arrest exists whenever facts and circumstances within the knowledge of the police and of which there was reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee had committed [a] crime." *State v. Foy,* 662 A.2d 238, 240 (Me.1995) (quotation marks omitted). Here, the police only knew that "two black males" may have been involved in a minor altercation in the bar; that the victim had likely initiated the altercation and did not want to pursue any charges; and that Johnson, a black male, was encountered standing outside the bar with another black male.

This evidence did not establish that the police had probable cause to believe that Johnson had committed a crime. *See id.* Further, the evidence did not establish that, prior to searching Johnson, the police informed him of the provisions of 17–A M.R.S. § 15–A(2). Accordingly, the evidence did not establish beyond a reasonable doubt the elements of 17–A M.R.S. § 15–A(2). *See Smen,* 2006 ME 40, ¶ 7, 895 A.2d 319.

[¶ 12] We next look to the period of time after the officers searched Johnson and discovered his driver's license and knife. At this point, the officers had probable cause to believe that Johnson had committed the crime of possession or distribution of dangerous knives, 17–A M.R.S. § 1055(1). However, the evidence offered at trial did not establish beyond a reasonable doubt that Johnson persisted in his failure or refusal to provide reasonably credible evidence of his correct name, address, or date of birth. When Aucoin asked Johnson to confirm whether he was the individual on the driver's license, Johnson told Aucoin, "Look at it for yourself,"

---

ted or is committing a crime other than one listed under section 15, subsection 1, paragraph A, and to whom a law enforcement officer is authorized to deliver a summons pursuant to subsection 1, who intentionally fails or refuses to provide to that officer reasonably credible evidence of that person's correct name, address or date of birth commits a Class E crime, if the person persists in the failure or refusal after having been informed by the officer of the provisions of this subsection. If that person furnishes the officer evidence of the person's correct name, address and date of birth and the evidence does not appear to be reasonably credible, the officer shall attempt to verify the evidence as quickly as is reasonably possible. During the period the verification is being attempted, the officer may require the person to remain in the officer's presence for a period not to exceed 2 hours. During this period, if the officer reasonably believes that the officer's safety or the safety of others present requires, the officer may search for any dangerous weapon by an external patting of that person's outer clothing. If in the course of the search the officer feels an object that the officer reasonably believes to be a dangerous weapon, the officer may take such action as is necessary to examine the object, but may take permanent possession of the object only if it is subject to forfeiture. The requirement that the person remain in the presence of the officer does not constitute an arrest. After informing that person of the provisions of this subsection, the officer may arrest the person either if the person intentionally refuses to furnish any evidence of that person's correct name, address or date of birth or if, after attempting to verify the evidence as provided for in this subsection, the officer has probable cause to believe that the person has intentionally failed to provide reasonably credible evidence of the person's correct name, address or date of birth.

or "[Y]ou're looking at my ID. Read it yourself." Further, when asked at trial whether Johnson was "trying to suggest that he was not the person on the ID," Aucoin responded "No."

[¶ 13] For the foregoing reasons, we vacate the court's judgment of conviction of failing to provide his correct name, address, and date of birth. Because Johnson's sentence for this offense was concurrent with the sentences for the other offenses of which Johnson was convicted, there is no need to remand for resentencing.

The entry is:

Judgment of conviction of failing to give reasonably credible evidence of one's name, address, or date of birth is vacated. The judgment is affirmed in all other respects.