STATE of Maine

v.

Steven BUTT.

Supreme Judicial Court of Maine.

Submitted on Briefs March 14, 1995.
Decided April 27, 1995.

Julia Sheridan, Asst. Dist. Atty., Portland, for State.

Robert A. Levine, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Steven Butt appeals from judgments of conviction for two counts of criminal restraint by a parent in violation of 17–A M.R.S.A. § 303(1)(A) (1983) (Class C), entered in the Superior Court (Cumberland County, *Brennan, J.*) following a jury trial. Butt contends that the trial court erred in denying his motion for a judgment of acquittal because section 303(1)(A) requires a court order of custody to be violated, and that the joint custodial rights of the children's mother arising out of 19 M.R.S.A. § 211 (1981) does not satisfy that requirement. We are unpersuaded by Butt's contentions and affirm the convictions.

Butt was charged with committing two counts (one count for each of his two youngest children) of criminal restraint by a parent in violation of 17–A M.R.S.A. § 303(1)(A) during September 1992. In the same indictment, Merryanne Morningstar was charged

with two counts of aiding Butt in committing criminal restraint by a parent. After the trial court granted Morningstar's motion to sever her trial, Butt was tried before a jury in April 1993, at which the following evidence was revealed:

At the time of trial, Butt had been married to Diane Butt for twenty-four years and they had four children, the two youngest being 12 and 7 years of age. Butt worked as a counselor helping people leave religious cults. He counseled Morningstar, and in May or June 1992, Morningstar moved in with the Butts. In early July, Butt told his wife that he and Morningstar had been married by God, that Diane would have to accept it, and that they all were going to live under the same roof as one family. Butt subsequently told Diane that he had heard from God and she had to obey his decisions. Although Diane initially accepted the arrangement, she became troubled with the situation and expressed her concern to her husband. Butt told a friend that unless Diane accepted the situation, he was going to take the youngest children and not return. The friend warned Butt that there would be legal repercussions, but Butt "believed that God would take care of things."

On September 1, 1992, the situation came to a head. Butt and Diane had a physical struggle in their kitchen during which Butt pulled Diane to the floor and attempted to cast the "Jezebel spirit" out of her.[1] Shortly after the struggle, Butt and Morningstar took the two youngest children and left.

Diane never consented to Butt and Morningstar taking the two children. Diane tried to get her children back and hired a private investigator. She learned that the children had been taken to Maryland. Diane received a letter from Butt telling her that she would not find the children and that he intended to keep the children and live elsewhere. Diane never spoke with Butt while he was away, but Butt did speak with his older son several times. Butt told his son that he would not bring the children back until Diane accepted Morningstar and that he could stay away without being found.

After an arrest warrant was issued, Butt was arrested in Waterville and the children were located at a mobile home in Canaan. In response to questioning by a detective, Butt said that his intention was to take the children to a place where Diane could not find them. He told the detective that he returned to Maine from Maryland because private detectives were looking for the children and he did not want them to be located.

At the close of the State's case, Butt moved for a judgment of acquittal. He contended that the State had presented insufficient evidence because it had not shown that he had violated a court order and therefore, there was no evidence that he lacked the legal right to take the children. The trial court denied the motion. Butt then testified in his own defense.

The jury returned a guilty verdicts on both counts, and the trial court accordingly entered judgments of convictions. Butt appealed.

17–A M.R.S.A. § 303(1) (1983) provides, in pertinent part:

1. A person is guilty of criminal restraint by parent if, being the parent of a child under the age of 16, and knowing he has no legal right to do so, he:

A. Takes, retains or entices the child from the custody of his other parent, guardian or other lawful custodian with the intent to remove the child from the State or to secrete him and hold him in a place where he is not likely to be found; or

B. Takes, retains or entices the child from the custody of his other parent, guardian or other lawful custodian, whose custodial authority was established by a court of this State, in the state in which the child is residing with his legal custodian with the intent to remove the child from that state or to secrete him and hold him in a place where he is not likely to be found.

Whether a violation of a custody decree is a prerequisite to prove a violation of section 303(1)(A) is a question of statutory

---

1. Butt defined "Jezebel spirit" as a "demonic spirit that attacks women." Apparently, Butt had attempted to exorcise the Jezebel spirit from Diane on previous occasions.

interpretation, and thus a matter for this court. *Maine Beer & Wine Wholesalers Assoc. v. State,* 619 A.2d 94, 97 (Me.1993). In interpreting a statute, we first examine the plain meaning of the statutory language. *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994). The fundamental rule in the interpretation of any statute is that the intent of the legislature, as divined from the statutory language itself, controls. *Central Maine Medical Ctr. v. Maine Health Care Fin. Comm'n,* 644 A.2d 1383, 1386 (Me.1994).

■ Section 303(1)(A) does not prohibit a parent from taking his or her child. Rather, it prohibits the taking of a child from the custody of the other parent with the purpose of secreting and holding the child in a place where the child is not likely to be found, with the knowledge that the parent has no legal right to do so. The plain language of section 303(1)(A) does not require a violation of a custody decree for there to be a violation of its provisions. In contrast, section 303(1)(B) provides explicitly that the custody of a parent or a lawful custodian must be "established by a court of this state" in order for there to be a violation of that section.

■ The State proved that Butt, as the parent, took his children from their home where their mother had equal legal custody and control over them, and that his purpose was to keep them away from their mother; to secrete them and hold them in a place where they were not likely to be found. Butt contends, however, that the State failed to prove that he knew he had no legal right to take the children and keep them from their mother.[2] Relying on the legislative history of section 303, he points to the absence of a court order granting custody to the mother and contends that such an order is required

in order for there to be a violation of section 303(1)(A). We disagree.

■ In the absence of a court order awarding custody of children, both parents are jointly entitled to their care, custody, and control. 19 M.R.S.A. § 211 (1981).[3] Although as a parent, Butt had rights of custody in regard to his children, so too did his wife Diane, the mother of those children. Butt can point to no convincing reason or any authority why, absent a contrary court order, section 303(1)(A) does not prohibit one parent from depriving the other parent of their legal right to joint custody. Butt, after all, deprived Diane of any and all contact with the children. There is no requirement in the plain language of section 303(1)(A), as there is in section 303(1)(B), that those custody rights flow from a court order or decree. Moreover, Butt can point to no court order granting custody of his minor children to him. Accordingly, the jury was entitled to find that Butt knew that he had no legal right to take and secrete his children, and to keep them from their mother.

We are unpersuaded by Butt's contention that the legislative history of section 303 supports his thesis that he cannot be convicted of a violation of section 303 in the absence of a court order granting custody to his wife. When, as here, the plain meaning of the statute is clear, there is no need to look beyond the words to the legislative history. *Central Maine Medical Ctr.,* 644 A.2d at 1386. Moreover, Butt fails to demonstrate that the legislative history compels a contrary result. When enacting the predecessor to section 303(1)(A), the Legislature stated that the statute "relates to custody disputes between separated parents and provides a penalty when that custody is interfered

---

**2.** Butt contends that the trial court erred in denying his motion for a judgment of acquittal made at the close of the State's case. Following the denial of his motion, Butt presented his own evidence. In reviewing the sufficiency of the evidence on appeal, we must take into account all the evidence presented at trial. *State v. Lyons,* 466 A.2d 868, 871 (Me.1983) (by presenting evidence on his own behalf, defendant waives review of sufficiency of the evidence at the close of State's case). This distinction, however, does not make a difference in this case because Butt's

challenge to the sufficiency of the evidence is predicated on the absence of a custody decree.

**3.** 19 M.R.S.A. § 211 (1981) provides:

The father and mother are the joint natural guardians of their minor children and are jointly entitled to the care, custody, control, services and earnings of such children. Neither parent has any rights paramount to the rights of the other with reference to any matter affecting such children. The court, without objection, instructed the jury as to this law.

with." 17–A M.R.S.A. § 302 comment (1983). Neither in the original comment to the statute, nor in its subsequent changes, has the Legislature ever stated that a person cannot violate section 303 unless he is in contravention of a court ordered custody decree.

The entry is:

Judgments affirmed.

All concurring.