2012 ME 94

**STATE of Maine**

v.

**Colin HAAG.**

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2012.

Decided: July 17, 2012.

Toff Toffolon, Esq. (orally), Machias, for appellant Colin Haag.

Carletta Bassano, District Attorney, and Paul Cavanaugh II, First Asst. Dist. Atty. (orally), Prosecutorial District VII, Ellsworth and Calais, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] Colin Haag appeals from judgments of conviction for two counts of kidnapping (Class A), 17–A M.R.S. § 301(1)(B)(2) (2011), following a jury trial in the Superior Court (Washington County, *Cuddy, J.*). Haag contends that the evidence presented at trial was insufficient to support his convictions and that the court erred in denying his motion for judg-

ment of acquittal. We affirm the judgments.

## I. BACKGROUND

[¶ 2] Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt. *State v. Elliott*, 2010 ME 3, ¶ 2, 987 A.2d 513.

[¶ 3] Randall and Amanda Hodges were married in Florida in December of 1993. The couple had three children together, a son and two daughters. Later, after the children were born, the family moved to South Carolina.

[¶ 4] In August 2007, Randall and Amanda separated. They agreed that Randall would assume primary responsibility for their son, age twelve, and that Amanda would care for their two daughters, ages nine and six. They did not seek a divorce or enter into a formal custody agreement. Two days later, Randall and their son moved back to Florida to live with Randall's mother. Soon after her separation from Randall, Amanda and the girls started living with Colin Haag.

[¶ 5] Randall stayed in contact with Amanda and the girls for approximately a month; thereafter, he was unable to contact them in person, by phone, or by mail, despite his repeated efforts. On two occasions, Randall traveled to the girls' last known address in South Carolina to locate them. The evidence indicates that, on one of those trips, upon Randall's arrival, Haag and the mother pretended that no one was home and hid inside their house. Shortly thereafter, they relocated, apparently to keep the girls hidden from their father.

[¶ 6] In February 2008, Amanda sent Randall an application for divorce. Randall did not sign the paperwork because it indicated that they had no children. Later, Randall filed for divorce and

sent paperwork to Amanda for her to sign; he never received a response.

[¶ 7] On March 8, 2008, Amanda purported to marry Haag. At the time, both she and Haag were legally married to other people. After the wedding, the two girls started using the last name Haag. Both Haag and Amanda told the girls that they could not contact their father.

[¶ 8] Later, after multiple relocations, which included at least three moves within South Carolina and a residence in West Virginia, Haag, Amanda, and the girls moved to Maine where Haag sought a job as a pastor. Haag and Amanda homeschooled the girls and told people that the girls were Haag's biological children. Haag and Amanda sought public assistance and indicated on the application that Haag had adopted the girls. As part of their application, they produced altered social security cards that showed the girls' last name as Haag.

[¶ 9] Randall learned that the girls were in Maine when his sister found information as to their whereabouts on the Internet. Randall and his sister flew to Maine in April 2010 to locate the girls, who were then ages twelve and nine. At that time, Randall had not seen or heard from them in over two years.

[¶ 10] After arriving in Maine, Randall and his sister drove to Jonesport where Haag, Amanda, and the girls were living. A car was parked in the driveway of the Haag residence, and Randall repeatedly knocked on the front door of the home, but no one answered. Randall and his sister left the house and drove to Machias to rent a motel room. Later that day, they returned to Jonesport. The same car was in the driveway, and it appeared that someone was in the house. Randall and his sister left the property, parked their car on the road near the home, and called the sheriff's department to inform them that they were trying to locate Randall's daughters.

[¶ 11] Later, an officer arrived at the home and spoke to Haag and Amanda. The officer learned that the girls were alone in a motel room in Ellsworth. The officer called the Ellsworth Police Department to check on the girls. The girls were found alone in the motel room with overnight bags packed with clothes and toys. Officers also found a bag in the room that contained a computer, digital camera, digital recorder, and paperwork belonging to Haag. The girls were taken to the Ellsworth Police Department where they were reunited with their father, Randall. The Ellsworth police contacted the Department of Health and Human Services and were told that the girls should remain in Randall's care. The next day, Randall and the girls flew back to Florida, where they have lived since. Randall and Amanda divorced, and Randall was awarded sole parental responsibility for the children.

[¶ 12] Haag was indicted on two counts of kidnapping, pursuant to 17–A M.R.S. § 301(1)(B)(2). He entered a plea of not guilty to both counts. Beginning on February 8, 2011, the matter was tried before a jury in the Superior Court.[1] Over the course of the trial, Randall, the girls, law enforcement officers, and other witnesses testified.

[¶ 13] Both girls testified that their mother and Haag told them that they

---

1. Amanda was charged with two counts of criminal restraint by a parent (Class C), 17–A M.R.S. § 303(1)(A) (2011). Haag and Amanda were tried jointly. Amanda was found guilty of two counts of criminal restraint by a parent and was sentenced to two and a half years for each count, to run concurrently, all but nine months suspended, and two years of probation. Amanda did not appeal her conviction.

could not contact their father. The older daughter also testified that her mother and Haag took the girls to the motel in Ellsworth and that Haag drove the car. When asked why they were brought to the motel, the older daughter testified, "Because my Dad was up here." The daughter also testified that her mother and Haag stayed at the motel for fifteen minutes and then left. The girls were alone in the motel room until a police officer arrived at approximately 8:30 p.m.

[¶ 14] At the conclusion of the State's case, Haag moved for a judgment of acquittal pursuant to M.R.Crim. P. 29(a). The court denied the motion. Haag renewed his motion at the close of all of the evidence, and again the court denied the motion, finding that there was sufficient evidence, if believed by the jury, to sustain the convictions. Haag waived his right to testify on his own behalf and elected not to have the jury instructed on the lesser-included offenses of attempted kidnapping, *see* 17–A M.R.S. 152(1)(B) (2011), and criminal restraint, *see* 17–A M.R.S. § 302(1)(A)(1) (2011).

[¶ 15] On February 10, 2011, the jury found Haag guilty of two counts of kidnapping. The court sentenced Haag to two and a half years for each count, with credit for time served, with the sentences to run concurrently. Haag appeals from the convictions.

## II. DISCUSSION

[¶ 16] Haag argues that the evidence presented at trial was not sufficient to permit a rational jury to conclude beyond a reasonable doubt that he kidnapped the two girls.

[¶ 17] When a defendant in a criminal case challenges the sufficiency of the evidence to support the finding of guilt, "we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally find every element of the offense beyond a reasonable doubt." *State v. Cook*, 2010 ME 85, ¶ 7, 2 A.3d 333 (quotation marks omitted). As the fact-finder, the jury is permitted to draw all reasonable inferences from the evidence presented at trial. *Id.* We will reverse a jury verdict only where "no trier of fact rationally could find proof of guilt beyond a reasonable doubt." *State v. Brown*, 2000 ME 25, ¶ 7, 757 A.2d 768 (quotation marks omitted).

[¶ 18] Although the State could have charged Haag with the crime of criminal restraint, *see* 17–A M.R.S. § 302(1)(A)(1),[2] it chose to charge him with the more serious crime of kidnapping. The decision may have been based on Haag's history of assisting Amanda in keeping the girls from their father over a significant period of time. Regardless, the choice of which charge to pursue is left to the discretion of the prosecutor, and our role is to assure that the State met its burden in prosecuting the chosen charge. At trial, Haag declined to allow the court to instruct the jury on the lesser included offenses of criminal restraint or attempted kidnapping.

[¶ 19] A person is guilty of kidnapping if that person "knowingly restrains another person" by "secreting and holding the other person in a place where the other person is not likely to be found." 17–A

2. Title 17–A M.R.S. § 302(1)(A)(1) (2011) provides that a person is guilty of criminal restraint if:

A. Knowing the actor has no legal right to do so, the actor intentionally or knowingly takes, retains or entices another person who:

(1) Is less than 14 years of age. Violation of this subparagraph is a Class D crime.

M.R.S. § 301(1)(B)(2). Sections 301(2)(A) and (B) define "restrain":

2. "Restrain" means to restrict substantially the movements of another person without the other person's consent or other lawful authority by:

A. Removing the other person from the other person's residence or place of business or from a school; [or]

B. Moving the other person a substantial distance from the vicinity where the other person is found.

The term "secreting" is not defined in the statute; however, "secrete" means "to deposit or conceal in a hiding place." Webster's Third New International Dictionary 2052 (2002).

[¶ 20] Thus, to convict Haag, the jury must have been able to rationally find that Haag (1) knowingly restrained the girls by removing them from their residence, or by moving them a substantial distance; (2) that he did so without the girls' consent or other lawful authority; and (3) that he secreted and held the girls in a place where they were not likely to be found. *See* 17–A M.R.S. §§ 301(1)(B)(2), 301(2)(A), (B).

[¶ 21] Here, the evidence was more than sufficient for the jury to rationally have found beyond a reasonable doubt that Haag engaged in the first and third elements of kidnapping. Regarding the first element, Haag restrained the girls, at a minimum, by removing them from their residence in Jonesport and driving them a substantial distance, over fifty miles, to a motel in Ellsworth.

[¶ 22] Regarding the third element, the jury could rationally have found that the girls were not likely to be found at the motel because no one other than Haag and the girls' mother knew that they had been brought there and left alone. Fur-

thermore, the jury could have inferred from the evidence at trial that Haag was purposefully hiding the girls from Randall. *See Cook*, 2010 ME 85, ¶ 7, 2 A.3d 333. One of the girls testified that they were brought to the motel "[b]ecause my Dad was up here," and evidence was presented that showed that Haag and Amanda had moved with the girls multiple times, that they told the girls that they could not contact their father, and that they held the girls out as Haag's own children.

[¶ 23] We focus, therefore, on the second element of the charge: knowingly restraining the girls "without [the girls'] consent or other lawful authority." 17–A M.R.S. § 301(2); *see* 17–A M.R.S. § 301(1)(B)(2). Because the girls were minors at the time of the event in question, they could not consent to being hidden from their father at the motel in Ellsworth. *See* 17–A M.R.S. § 109(3)(B) (2011).

[¶ 24] The question then is whether Haag had the "lawful authority" to keep the girls from their father, Randall, and hide them at the motel far from their home. Pursuant to Maine law, absent a court order, parents are jointly entitled to the care, custody and control of their children, and "[n]either parent has any rights paramount to the rights of the other...." 19–A M.R.S. § 1651 (2011). We have held that a father could be held criminally liable for criminal restraint by a parent, absent a court order, when he took his children from their home with the intention of hiding them from their mother. *State v. Butt*, 656 A.2d 1225, 1227 (Me.1995) (stating that although a father had the right to joint custody of his children, absent a custody decree stating otherwise, so did his wife, and he could be found guilty of criminal restraint by a parent for hiding the children from her and thereby depriving her of her legal right to joint custody). In this

instance, because Amanda had no lawful authority to keep the girls from their father, *see id.*, she could not give Haag the authority to do what she herself could not do as the girls' parent. The policy we addressed in *Butt* was explicit: absent a court order stating otherwise, parents should have equal access to their children and for one parent, or one assisting a parent, to interfere with that equal access is unlawful.[3] Thus, the jury could find on this record that Haag had no lawful authority to restrain the girls.

[¶ 25] We note that this is not a case where the authority of the parents over the children was in dispute in a custody proceeding, or a case in which ordinary day-to-day conflicts concerning custody and contact arrangements placed the parents in contention. Rather, Haag, in concert with the children's mother, masterminded a plan to hide two young children from their biological father for over two years; a plan that included multiple moves through multiple states and the production of altered social security cards for the children, and which culminated in the criminal action at issue here—moving the children miles from their home and hiding them alone in a motel, all with the intention of keeping the children from having contact with their father.

[¶ 26] In light of this evidence, the jury could rationally have found beyond a reasonable doubt that Haag was guilty of kidnapping the two girls, and we affirm the verdicts. Because there was sufficient evidence presented at trial to support the jury's guilty verdicts, the court did not err when it denied Haag's motion for acquittal pursuant to M.R.Crim. P. 29(a). *See State v. Standring*, 2008 ME 188, ¶ 12, 960 A.2d 1210.

---

3. We note that, in both *State v. Butt*, 656 A.2d 1225, 1226–27 (Me.1995), and here, the convicted parent kept the children away from the other parent for extended periods of time.