MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2014 ME 9
Docket:       Was-13-173
Submitted
 On Briefs:   December 13, 2013
Decided:      January 23, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

STATE OF MAINE

v.

DAVID W. TROY

ALEXANDER, J.

[¶1] David W. Troy was convicted of escape (Class B), 17-A M.R.S. § 755(1)(B) (2013), and assault on an officer (Class C), 17-A M.R.S. § 752-A(1)(B) (2013), for striking a corrections officer in a courtroom and then fleeing from the courtroom before being captured while attempting to flee from the courthouse.[1] Troy appeals from the judgment of conviction entered in the Superior Court (Washington County, *R. Murray, J.*) following a jury trial.

---

[1] Title 17-A M.R.S. § 755(1) (2013) states:

 **1.** A person is guilty of escape if without official permission the person intentionally:

 **A.** Leaves official custody or intentionally fails to return to official custody following temporary leave granted for a specific purpose or a limited period. Violation of this paragraph is a Class C crime; or

 **B.** Violates paragraph A and at the time of the escape the person uses physical force against another person, threatens to use physical force or is armed with a dangerous weapon. Violation of this paragraph is a Class B crime.

Title 17-A M.R.S. § 752-A(1)(B) (2013) states:

2

[¶2]  Troy argues on appeal that the evidence was not sufficient to support (1) a finding that he was in custody, as required to support each conviction, and (2) a finding that he left the courthouse, which he contends was necessary to support the conviction of escape.  We affirm the judgment.

## I.  CASE HISTORY

[¶3]  "Viewing the evidence admitted at trial in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt."  *State v. Woodard*, 2013 ME 36, ¶ 7, 68 A.3d 1250.

[¶4]  On February 27, 2012, David W. Troy appeared, on a general docket day, before the Superior Court in Washington County regarding a criminal matter.[2]  A corrections officer with the Washington County Sheriff's Office was present in the courtroom during Troy's appearance.  The corrections officer's responsibilities included transporting individuals back and forth between the courtroom and the jail and taking individuals into custody "when the Judge says they're in custody."

---

1.  A person is guilty of assault on an officer if:

. . . .

B.  While in custody pursuant to an arrest or pursuant to a court order, the person commits an assault on a corrections officer, corrections supervisor or another member of the staff of an institution while the staff member is performing official duties. As used in this paragraph "assault" means the crime defined in section 207, subsection 1, paragraph A.

2  The exact nature of the criminal matter is not indicated in the record.

[¶5]  Testimony at trial described the attested docket entry for the pending criminal matter, which indicated that the court (*Hunter, J.*) had ordered Troy into custody.  Other testimony indicated that in response to hearing the court order Troy into custody, the corrections officer approached Troy, who was seated at the defense table, intending to place him in handcuffs and transport him to the jail.  The judicial marshal providing courtroom security observed that, when the court ordered Troy into custody, Troy acted nervous, was looking around, and was not "acting normal."[3]

[¶6]  As the corrections officer reached out with handcuffs, Troy said either, "I'm not going to jail" or "I'm not going into custody."  Troy then hit the corrections officer in the chest and knocked her to the floor.  Troy scanned the courtroom, jumped over a chair and the courtroom bar, fled the courtroom through the exit door, and ran down the stairs leading to the first floor of the courthouse.  The judicial marshal radioed to other marshals downstairs, instructing them to stop Troy before he exited the front door.  Judicial marshals apprehended Troy at the base of the stairs.

[¶7]  Troy was charged by criminal complaint, and later indictment, with one count each of escape, assault on an officer, and criminal mischief (Class D),

---

[3]  Troy objected at trial, essentially unopposed, that it would be inadmissible hearsay for the corrections officer and judicial marshal to testify to their observations that the court had ordered Troy into custody in their presence on February 27, 2012.  In response to the objection, the court instructed the jury that it was to consider the officer's and marshal's testimony only for the purpose of understanding the effect of the court's order on the witnesses and on Troy, not for the truth of the court's statement.

4

17-A M.R.S. § 806(1)(A) (2013). Troy pleaded not guilty and was found competent to stand trial.

[¶8] A jury trial was held at which Troy appeared with counsel. At trial, the State showed an attested docket record to a member of the staff of the Washington County Court Clerk's office who is familiar with docket records maintained by that office. The clerk testified that that docket record involved Troy, whom she identified in the courtroom, and that it contained an entry for February 27, 2012, showing that Troy had been "ordered into custody by the [c]ourt" on that date. The docket record was not offered or admitted into evidence.[4] Troy did not object to the clerk's testimony and did not cross-examine her.

[¶9] The jury found Troy guilty as charged of escape and assault on an officer and found him not guilty of criminal mischief. The court sentenced Troy to eighteen months on each of the convictions, to be served concurrently with no time suspended, and assessed fees. Troy brought this timely appeal. *See* 15 M.R.S. § 2115 (2013); M.R. App. P. 2.

---

[4] Apparently the State and defense counsel had agreed that information about the prior criminal charge should not be presented to the jury. Perhaps for that same reason there was no effort to invoke M.R. Evid. 201 to take judicial notice of the information in the docket entries or other information in court records. *See* Field & Murray, *Maine Evidence* § 201.3 at 57 (6th ed. 2007) ("A court will take judicial notice of pleadings, dockets, and other records of that court in the same or in other lawsuits.") (citing *Finn v. Lipman*, 526 A.2d 1380, 1381 (Me. 1987)).

## II.  LEGAL ANALYSIS

[¶10]   When a criminal defendant challenges whether the evidence was sufficient to support a finding of guilt, "'we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally find every element of the offense beyond a reasonable doubt.'"  *Woodard*, 2013 ME 36, ¶ 19, 68 A.3d 1250 (quoting *State v. Haag*, 2012 ME 94, ¶ 17, 48 A.3d 207).  The jury, as the fact-finder, is permitted to draw all reasonable inferences from the evidence admitted at trial.  *Id.*  We will vacate a judgment entered on a jury verdict for lack of sufficient evidence only when "no trier of fact rationally could find proof of guilt beyond a reasonable doubt."  *Id.*

A.    Evidence That Troy Was In Custody Pursuant to a Court Order

[¶11]   Troy argues that the evidence was insufficient to prove that he was ordered into custody by the court on February 27, 2012, as required to support Troy's convictions for escape and assault on an officer, because (1) the docket record that might have supported such a finding, and that Troy concedes was admissible under the business or public records exceptions to the hearsay rule, was never admitted into evidence, and (2) the clerk's testimony, to which Troy did not object, concerning the entries on that docket record was inadmissible hearsay.[5]

---

[5]  Troy also argues that "there was no indication from the clerk that the David Troy referred to in the docket record she read from was the same David Troy on trial."  On the contrary, the clerk testified without objection that the David Troy who was the subject of the docket record was the same David Troy being tried for escape, assault on an officer, and criminal mischief.

6

[¶12]  A person is guilty of escape pursuant to 17-A M.R.S. § 755(1)(B) if, in relevant part, the person intentionally leaves official custody without official permission and, at the time of the escape, uses physical force against another person.  "Official custody" for purposes of section 755 means, in part, "any custody pursuant to court order."[6]  17-A M.R.S. § 755(3) (2013).  Similarly, a person is guilty of assault on an officer if, "[w]hile in custody pursuant to an arrest or pursuant to a court order," he assaults a corrections officer who is performing official duties.  17-A M.R.S. § 752-A(1)(B); *see also* 17-A M.R.S. § 207(1)(A) (2013).

[¶13]  The evidence admitted at trial was sufficient to support the jury's finding beyond a reasonable doubt that Troy was in custody pursuant to a court order at the time that he assaulted the corrections officer and intentionally left custody without official permission.  The clerk testified that a docket entry in the prior criminal matter involving Troy stated that the court ordered Troy into custody on the day of the escape and assault.  In addition, the corrections officer and the judicial marshal testified about the officer's actions and Troy's reactions, from which the jury could certainly infer that the court had ordered Troy into custody. The jury therefore rationally could have found beyond a reasonable doubt, based on the evidence admitted at trial, that Troy was in custody or in "official custody"

---

[6]  The State concedes on appeal that no other meaning of "official custody" applies in this case.

for purposes of the offenses of escape and assault on an officer. 17-A M.R.S. §§ 752-A(1)(B), 755(1), (3).

[¶14] We take this opportunity to clarify that the corrections officer and judicial marshal who observed the court verbally order Troy into custody could have directly testified at trial that they observed and heard the court order Troy into custody rather than testify only as to the effect that hearing those words had on them and on Troy. Despite the concern the parties expressed that testimony as to what the witnesses heard the judge say in open court would constitute inadmissible hearsay, such testimony is admissible as direct observation of an exercise of judicial action.

[¶15] We concluded in *State v. Duquette*, 475 A.2d 1145, 1147-48 (Me. 1984), that testimony concerning the existence of a court order placing a defendant in custody presents no hearsay concerns. In that decision, we stated:

> The defendant asserts [that the witness] should not have been allowed to testify to the existence of the court order because the order was written hearsay falling within no exception to the hearsay rule. The defendant misunderstands the purpose for which [the witness's] testimony regarding the document was introduced. The prosecution did not, through [the witness], seek to prove the truth of any matter asserted within the court order. Rather, the prosecution sought only to show the *existence* of such order placing Duquette in custody. The jury could have found beyond a reasonable doubt from the testimony of [the State's witnesses] that . . . Duquette was in custody . . . pursuant to a court order . . . .

Accordingly, the officer and the marshal could have testified to their personal knowledge, based on direct hearing and observation, as to the existence of the court's order, placing Troy into custody, without running afoul of the hearsay rule.

[¶16] Similarly, contrary to Troy's contentions, the trial court did not err in admitting the clerk's testimony that the docket record documented the existence of a court order placing Troy in custody. *See id.*; *see also* M.R. Crim. P. 52(b); *State v. Patton*, 2012 ME 101, ¶ 28, 50 A.3d 544 (stating that, when no objection was made to the admission of testimony at trial, we review the admission of that evidence for obvious error).[7]

## B. Evidence Sufficient to Support the Escape Conviction

[¶17] Troy argues that the evidence was not sufficient to support a conviction for escape because there was no evidence that he ever actually departed from the courthouse. This argument presupposes that one commits escape only if

---

[7] Even if the clerk's testimony about the content of the docket entry establishing the existence of the court order triggers an analysis under the hearsay rule, docket entries themselves, if not admitted pursuant to M.R. Evid. 201, are separately admissible under the business records or public records exceptions to the hearsay rule. *See* M.R. Evid. 803(6), (8); *see generally State v. Tayman*, 2008 ME 177, ¶ 21, 960 A.2d 1151 (concluding that docket entries admitted against the defendant did not violate his right of confrontation because they are akin to business or public records). The fact that the relevant docket entry was admitted through the testimony of the clerk, rather than through the admission of the attested docket into evidence, does not make the evidence any less admissible under an exception to the hearsay rule, particularly when, as here, the clerk testified that the record was maintained by her office. *See, e.g.*, *United States v. Loera*, 923 F.2d 725, 729-31 (9th Cir. 1991) (holding that testimony concerning the content of certified docket entries, admitted into evidence only through an FBI agent who read the docket entries into the record in lieu of admission of the redacted docket, was, pursuant to the public records exception to the hearsay rule under the Federal Rules of Evidence, admissible to show the existence of prior misdemeanor convictions for certain purposes); *see also Vanderhorst v. Texas*, 821 S.W.2d 180, 183 (Tex. Ct. App. 1991) (affirming the admissibility of the testimony of a district clerk concerning the contents of a judge's docket sheet because the docket sheet would be admissible pursuant to the public records exception to the hearsay rule); *accord Reeves v. Arkansas*, 564 S.W.2d 503, 505 (Ark. 1978).

one departs from the physical structure he was in pursuant to court order. However, the plain language of section 755(1)(B), read alone and in the context of the statutory scheme, and relevant case law do not support Troy's contention. *See State v. Paradis*, 2010 ME 141, ¶¶ 5-6, 10 A.3d 695 (looking to the "plain language and obvious purpose of the statute" in the context of the statutory scheme in reviewing the interpretation of a criminal statute de novo); *State v. Campbell*, 314 A.2d 398, 404 (Me. 1974) (observing, in applying a prior version of an escape statute, that, "[b]roadly stated, an escape is the departure of a [person] from custody before he is discharged by due process of law").

[¶18]   Even though Troy did not successfully exit the courthouse after fleeing the courtroom, Troy intentionally left official custody without official permission when he: departed from the custody and control of the corrections officer by knocking her to the ground and fleeing as she was effecting the court's custody order; evaded the control of the judicial marshal in the courtroom who pursued Troy; and ran, uncontrolled by any person of authority, through the public areas of the courthouse toward the courthouse exit before he was finally apprehended.  This evidence was sufficient to support the jury's finding beyond a reasonable doubt that Troy "[left] official custody," without official permission, for purposes of the escape conviction.  17-A M.R.S. § 755(1).

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Hunter J. Tzovarras, Esq., Bangor, for appellant David W. Troy

Carletta Bassano, District Attorney, and Ethan Plaut, Asst. Dist. Atty., Prosecutorial District VII, Ellsworth, for appellee State of Maine

Washington County Superior Court docket number CR-2012-43
FOR CLERKS REFERENCE ONLY