MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2016 ME 12
Docket:        Cum-14-510
Argued:        November 4, 2015
Decided:       January 14, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
               HUMPHREY, JJ.

STATE OF MAINE

v.

JASON J. WEAVER

GORMAN, J.

[¶1]  Jason J. Weaver appeals from a judgment of conviction for aggravated assault, 17-A M.R.S. § 208(1)(A) (2014),[1] entered in the Unified Criminal Docket (Cumberland County, *Warren, J.*) after a jury trial.  Weaver argues that his trial was tainted by obvious error as a result of a statement the prosecutor made during closing argument and the court's self-defense jury instruction.  He also challenges the sufficiency of the evidence supporting his conviction.  We affirm.

## I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the jury's verdict, the trial record supports the following facts.  *See State v. Patton*, 2012 ME 101, ¶ 2, 50 A.3d 544.  Weaver and the victim began dating in September of 2013.

---

[1]  Title 17-A M.R.S. § 208(1)(A) has since been amended.  P.L. 2015, ch. 358, § 1 (effective Oct. 15, 2015).

2

In January of 2014, the two began arguing after the victim refused to give Weaver her cellular telephone. In order to get the telephone, Weaver grabbed the victim's wrists, straddled her, and pushed her face into the bed. After some struggling, the victim was able to move enough so that she was facing Weaver. When he put his hands around her neck, she bit him. Weaver then threw the victim off the bed, where her head struck and broke a closet door.

[¶3] Weaver eventually returned the victim's telephone, but later he took it again and smashed it on the floor. He then punched the victim six times on the left side of her head.

[¶4] When the victim was able to get to a hospital, she learned that, among other injuries, she had suffered two broken eye sockets and a fractured vertebral body. She had double vision for about six weeks, wore a neck brace for twelve weeks, missed about three and a half months of work, and was still experiencing headaches at the time of trial about seven months after the assault.

[¶5] On July 24, 2014, the State charged Weaver by information with aggravated assault (Class B), based on an allegation of serious bodily injury, 17-A M.R.S. § 208(1)(A).[2] Weaver waived indictment and pleaded not guilty to

---

[2] In February of 2014, Weaver was indicted on a charge of aggravated assault (Class A), in violation of 17-A M.R.S. § 208(1)(A) (2014), based on an allegation that he had previous convictions for assault. *See* 17-A M.R.S. § 1252(4-A) (2015). Although the State did not file its dismissal of the Class A charge until after sentencing, the parties and the court all understood that the State was proceeding at trial only on the Class B charge.

the charge. The court held a jury trial on July 30 and 31, 2014. Weaver's theory of the case throughout the trial was that the victim was the aggressor, that she was angry with him and minimized her assaults on him, and that she was not being truthful. During his opening statement, for example, Weaver's attorney commented that

> there are going to be witnesses, and one in particular, [the victim], who . . . is going to have a motive to lie, and is going to have a bias here. . . . I would suggest to you that she's not truthful with the officers, that she minimizes, that she does not want to admit certain facts here because she doesn't want to go to jail . . . .

Weaver did not testify, but the State admitted parts of an audio recording of an interview with the police in which Weaver related a version of the incident. In that interview Weaver explained that he had been injured when he defended himself against the victim. He stated that, after he took her phone, the victim bit him on the lower back, and was then thrown towards the closet when he jumped up to shrug her off of his back. He also told the officers that he had struck the victim once in the face, but only after she bit his hand or arm.

[¶6] In closing arguments, both parties discussed the victim's credibility. Weaver argued that the victim's version of the events was not credible considering the other evidence, concluding the argument by stating that "[i]n order to convict Mr. Weaver beyond a reasonable doubt . . . you need to be able to—to trust [the victim]. And [the victim] is not trustworthy." In its rebuttal closing argument, the

4

State commented that "despite [the victim's] inconsistencies . . . her version is credible, it's corroborated by the evidence, it's corroborated by the physical evidence of her injuries and the physical evidence that was seen at the defendant's house." Later, as part of its charge, the court reminded the jury that the attorneys' closing arguments were not evidence, and that only the jury could determine credibility.

[¶7] The parties agreed that the evidence generated a self-defense instruction. *See* 17-A M.R.S. § 108 (2015). After explaining the elements of aggravated assault and the lesser included offense of simple assault, the court addressed self-defense as follows:

> Now, before you can convict Jason Weaver of either aggravated assault . . . or of simple assault . . . you will need to consider the issue of self-defense. Under Maine law a person is justified in using a reasonable degree of physical force upon another person in order to defend himself from an imminent use of force by the other person. Because the evidence in this case raises an issue of whether Jason Weaver was acting in self-defense, then in order to convict [him] of either aggravated assault or simple assault, the [S]tate must not only pro[ve] beyond a reasonable doubt that [he] intentionally, knowingly, or recklessly caused either serious bodily injury or bodily injury to [the victim], but must also prove one of the following things beyond a reasonable doubt as well. The first is that Jason Weaver was not acting in the belief that he was using a reasonable degree of force to defend himself from an imminent use of force by [the victim], or, that if [he] was acting in the belief that he was using a reasonable degree of force to defend himself from an imminent use of force by [the victim], his belief to that effect when viewed in light of the nature and purpose of his conduct and the circumstances known to him was a

gross deviation from the belief that a reasonable and prudent person would have held in the same situation.

The court discussed self-defense again in its final instructions to the jury before deliberations:

And at that point the clerk will ask how say you, do you find the defendant, Jason Weaver, guilty or not guilty of aggravated assault. Now if you answer that—in order to find guilty on that question, as you know, you have to find that the [S]tate proved all the elements of aggravated assault and has also overcome the defense of self-defense.

[¶8] Weaver did not object to the State's closing argument or the court's jury instructions. After the jury found Weaver guilty of aggravated assault, the court entered a judgment on the verdict, imposing a sentence of ten years of imprisonment with all but eight years suspended and three years of probation.[3] Weaver appeals.

## II. DISCUSSION

### A.  Prosecutorial Misconduct

[¶9]  Weaver takes issue with the prosecutor's statement that "despite [the victim's] inconsistencies . . . her version is credible, it's corroborated by the evidence, it's corroborated by the physical evidence of her injuries and the physical evidence that was seen at the defendant's house." Weaver argues that this lone

---

[3]  The Sentence Review Panel denied Weaver's application for leave to appeal his sentence. *State v. Weaver*, No. SRP-14-509 (Me. Sent. Rev. Panel Feb. 4, 2015); *see* 15 M.R.S. § 2151 (2015); M.R. App. P. 20.

6

statement during closing argument constituted prosecutorial misconduct and deprived him of a fair trial. Because Weaver did not object at trial, we review for obvious error.[4] *See State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032; U.C.D.R.P.—Cumberland County 52(b); M.R. Crim. P. 52(b).[5]

[¶10] We identify no error here. Viewed as part of the entire closing argument, the prosecutor's comment is most fairly read not as a personal opinion of the victim's inherent truthfulness, but as a permissible argument that other evidence was consistent with the victim's story. *See State v. Schmidt*, 2008 ME 151, ¶ 18, 957 A.2d 80. The statement also came in response to Weaver's attorney's argument to the jury that the victim "is not trustworthy." Finally, the court instructed the jury that it could not consider the parties' closing statements as evidence, and that only the jury could make credibility determinations. In the context of the two-day trial proceedings, the statement did not "urge[] or encourage[] the jury to make its decision based on something other than the facts that ha[d] been properly presented at trial and reasonable inferences

---

[4] To show obvious error, a defendant must show "(1) an error, (2) that is plain, and (3) that affects substantial rights." *State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032 (quotation marks omitted). In order to demonstrate that an error affects substantial rights, a defendant must show a "reasonable probability that the error . . . was sufficiently prejudicial to have affected the outcome of the proceeding." *Id.* ¶ 37 (citation omitted) (quotation marks omitted). Even when the defendant succeeds in meeting these three conditions, we "will set aside a jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.* ¶ 35 (quotation marks omitted).

[5] As of January 1, 2015, the Cumberland County Unified Criminal Docket Rules of Procedure were superseded by the Maine Rules of Unified Criminal Procedure. M.R.U. Crim. P. 1(e)(1).

that c[ould] be drawn from those facts." *Dolloff*, 2012 ME 130, ¶ 43, 58 A.3d 1032; *see also State v. Corrieri*, 654 A.2d 419, 422 (Me. 1995).

B.    Jury Instructions

[¶11]  Relying on *State v. Baker*, 2015 ME 39, 114 A.3d 214, Weaver also argues that the court's jury instruction on self-defense was erroneous.  Because he did not object at trial, we review for obvious error.  *See State v. Pabon*, 2011 ME 100, ¶¶ 18-29, 28 A.3d 1147; U.C.D.R.P.—Cumberland County 30(b), 52(b); M.R. Crim. P. 30(b), 52(b).  "[T]o vacate the judgment on the basis of obvious error we must determine that the offending instruction when reviewed with the charge as a whole constituted highly prejudicial error tending to produce manifest injustice."  *State v. Ashley*, 666 A.2d 103, 106-07 (Me. 1995) (quotation marks omitted).

[¶12]  In *Baker*, which we decided about nine months after the trial in this case, we concluded that a defendant had met this high burden, based on the combined effect of two "structural flaws."  2015 ME 39, ¶ 13, 114 A.3d 214. First, although the *Baker* court told the jury that the evidence had raised a self-defense issue, the court's instructions also indicated that the jury could find the defendant guilty without considering self-defense, which was a misstatement of the law.  *Id.* ¶¶ 14-15.  Second, the self-defense instruction itself "expressly informed the jury about the pathways to a guilty verdict," but "the court did not instruct the

jury of its obligation to find Baker not guilty if the evidence fell short of proving that his conduct was unjustified." *Id.* ¶ 18. The effect, we concluded, was that "the jury was left to guess about whether the law of self-defense could result in an acquittal or whether it might lead to some other result." *Id.* In addition, the effect of these structural errors was compounded when, in attempting to correct the instruction in response to a question from the jury during deliberations, the court further confused the issue and failed to correct the written instructions for the jury. *Id.* ¶¶ 19-21.

[¶13] Unlike the court in *Baker*, the court here made clear that even if the jury found that the State had proved the elements of aggravated assault or simple assault, the jury still could not find Weaver guilty without first resolving the issue of self-defense. Also unlike the court in *Baker*, the court here did not leave the jury with a written instruction that implied otherwise or that conflicted with its oral instructions. Weaver is correct that the court did not explicitly instruct the jury that it was required to find him not guilty if it found that the State had not disproved his self-defense theory beyond a reasonable doubt. To the extent that this was error, however, we are not persuaded that it constituted "highly prejudicial error tending to produce manifest injustice" in this case. *See Ashley*, 666 A.2d at 106-07

(quotation marks omitted). Viewed as a whole, in contrast to those in *Baker*, the court's instructions here were internally consistent and legally accurate.[6]

C.      Sufficiency of the Evidence

[¶14] Finally, Weaver argues that the evidence was insufficient to support his conviction. We disagree. "[W]e view the evidence in the light most favorable to the State in determining whether the fact-finder could rationally have found each element of the offense beyond a reasonable doubt." *State v. Reed*, 2013 ME 5, ¶ 9, 58 A.3d 1130 (quotation marks omitted). Weaver does not sufficiently account for this standard of review when he contends that the victim's version of events was dubious and that the jury should have accepted his self-defense theory. The tasks of evaluating the witnesses' credibility and weighing the evidence are within the exclusive province of the fact-finder. *State v. Cook*, 2010 ME 81, ¶ 7, 2 A.3d 313; *State v. Glover*, 594 A.2d 1086, 1088 (Me. 1991). Contrary to Weaver's contentions, the record contains sufficient evidence for the jury to have rationally found, beyond a reasonable doubt, that the State both (1) proved each element of the offense of aggravated assault as charged and (2) disproved Weaver's

---

[6] We note that the online version of the Maine Jury Instruction Manual has been updated to reflect our analysis and decision in *State v. Baker*, 2015 ME 39, 114 A.3d 214. *Compare* Alexander, *Maine Jury Instruction Manual* § 6-58 at 6-104-05 (2015 ed.), *with* Alexander, *Maine Jury Instruction Manual* § 6-58 (LEXIS through Jan. 11, 2016).

self-defense justification beyond a reasonable doubt. *See* 17-A M.R.S. §§ 108, 208(1)(A); *Reed*, 2013 ME 5, ¶ 9, 58 A.3d 1130.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Verne E. Paradie, Jr., Esq., Paradie, Sherman, Walker & Worden, Lewiston, for appellant Jason Weaver

Stephanie Anderson, District Attorney, and Kate Tierney, Asst. Dist. Atty., Prosecutorial District No. Two, Portland, for appellee State of Maine

**At oral argument:**

Verne E. Paradie, Jr., Esq., for appellee Jason Weaver

Kate Tierney, Asst. Dist. Atty., for appellee State of Maine