MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 81
Docket:        Som-24-392
Argued:        June 4, 2025
Decided:       August 21, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

MICHAEL L. KILGORE

HORTON, J.

[¶1]  Michael L. Kilgore appeals from a judgment of conviction of assault on an officer[1] (Class C), 17-A M.R.S. § 752-A(1)(A) (2025), entered by the trial court (Somerset County, *Benson, J.*) after a jury verdict.  Kilgore contends that the court's jury instructions contained two obvious errors of the same kind that led us to vacate the judgment in *State v. Baker*, 2015 ME 39, 114 A.3d 214:

- the court advised the jury that it should find Kilgore guilty if the State proved the elements of certain charges, without informing the jury that the State also had to disprove the existence of the three justification

---

[1]  Kilgore was also convicted of assault (Class D), 17-A M.R.S. § 207(1)(A) (2025), as a lesser included offense of an aggravated assault charge of which Kilgore was acquitted.  Because assault is also a lesser included offense of assault on an officer, the court merged Kilgore's assault conviction into his conviction for assault on an officer for purposes of the judgment.

defenses—self-defense, competing harms, and duress—that the court determined had been generated by the evidence; and

- the court failed to advise the jury to acquit Kilgore if the State did not disprove the existence of the defenses of duress and competing harms beyond a reasonable doubt.

[¶2]  Because we agree with Kilgore's contentions, we vacate the judgment and remand for a new trial.[2]

## I. BACKGROUND

### A.  Facts

[¶3]  "Viewing the evidence in the light most favorable to its verdict, the jury rationally could have found the following facts." *State v. Idris*, 2025 ME 17, ¶ 2, 331 A.3d 419.

[¶4]  In the early evening of September 30, 2022, a Pittsfield police officer, Chelsea Merry, was patrolling Phillips Corner Road in Pittsfield when she saw a car turn onto the road and drive away at high speed.  Her radar device registered the car's speed at sixty-eight or sixty-nine miles per hour in a

---

[2] Kilgore also argues that the court erred in admitting, over his objection, testimony by the police officer whom Kilgore was accused of assaulting about the long-term character of her injuries and convalescence.  Because we are vacating the judgment on other grounds, we need not address his argument.

forty-five-mile-per-hour zone. She then followed the car and conducted a traffic stop.

[¶5] Merry identified the driver as Michael Kilgore. She informed Kilgore why she had stopped him and requested his driver's license, registration, and proof of insurance. Merry asked if Kilgore's license was suspended, revoked, or subject to conditions, and he said that it was not. Upon returning to her police cruiser, she noticed two restrictions on the back of his license—"6-Conditional License, 7-Ignition Interlock,"[3]—that drew her suspicion. She returned to his vehicle and questioned him again. Kilgore told her that his license had previously been subject to the two restrictions but that they had expired. He added that the conditional license requirement was issued as a form of "alcohol" restriction. The combination of Kilgore's mention of "alcohol" and his increasing agitation led Merry to order Kilgore to step out of his vehicle. When he complied, his fists were clenched and he approached Merry in a confrontational manner, so she directed him to get back into his vehicle. She returned to her vehicle and wrote out a civil summons for speeding. As Merry walked to Kilgore's car for the third time, she noticed that the vehicle's

---

[3] In a radio call between Merry and the local dispatch center, the dispatch center confirmed that, according to Bureau of Motor Vehicle records, Kilgore's license was still subject to the "6-Conditional License" restriction but not to the "7-Ignition Interlock" restriction. Despite the dispatch center's communication, Merry testified that she believed that the ignition interlock device was required.

4

inspection had expired and added to the summons a traffic infraction charge of operating without a valid certificate of inspection. *See* 29-A M.R.S. § 1768(7) (2025). Kilgore became even more frustrated. As Merry was standing next to his vehicle and explaining the summons, Kilgore drove away, running over Merry's foot as he did so and causing her to fall.

[¶6] Merry called for assistance from other officers and pursued Kilgore in her cruiser. When she caught up to his vehicle, he pulled over and stopped. With her service firearm drawn, Merry approached his vehicle and ordered him to get out and show his hands. Kilgore refused. Merry then came closer to the vehicle and reached through the driver-side window to pull him out of his vehicle. Kilgore rolled up the window, and Merry's upper arms became trapped. Kilgore then drove forward a short distance, dragging Merry alongside, stopped, and then continued ahead. Merry was then able to extricate her arms but felt "immense pain" and saw "a bright white light."

[¶7] Kilgore's vehicle turned onto Route 2, and Merry followed in her cruiser. Her cruiser reached one-hundred miles per hour before she stopped the pursuit for public safety reasons. When she pulled off Route 2 to turn around, however, she spotted Kilgore's vehicle on a dead-end road and blocked it off. Kilgore exited his vehicle and, ignoring an order to get on the ground,

rushed toward Merry's cruiser. Merry attempted to arrest him, and an altercation ensued. Kilgore kicked and threw punches before Merry subdued him with pepper spray. She handcuffed him and placed him in her cruiser, at which time a sheriff's deputy arrived. Kilgore apologized to Merry and the deputy for having run over Merry's foot.

[¶8] After being treated at a local hospital, Merry wore a sling on her left arm, suffered bruising on both arms, and "couldn't do anything without [her] arms being in excruciating pain." The bruising disappeared after a few weeks, but her pain persisted.

## B.    Procedure

[¶9] On October 3, 2022, the State charged Kilgore by complaint with seven counts: (1) aggravated assault with a dangerous weapon (Class B), 17-A M.R.S. § 208(1)(B) (2025); (2) assault on an officer (Class C), 17-A M.R.S. § 752-A(1)(A) (2025); (3) eluding an officer (Class C), 29-A M.R.S. § 2414(3) (2025); (4) driving to endanger (Class E), 29-A M.R.S. § 2413(1) (2025); (5) criminal speed (Class E), 29-A M.R.S. § 2074(3) (2025); (6) refusing to submit to arrest (Class E), 17-A M.R.S. § 751-B(1)(A) (2025); and (7) failure to sign violation summons and complaint (Class E), 17-A M.R.S. § 17(1) (2025).

6

The grand jury returned an indictment for the same seven counts on February 24, 2023.

[¶10]  The court held a jury trial on June 20 and 21, 2024.  The State offered testimony from Merry, an eyewitness, and the sheriff's deputy.[4]  After its witnesses testified, the State rested its case.  The court denied Kilgore's motion for a judgment of acquittal.  Kilgore then testified and did not call other witnesses.

[¶11]  Before closing arguments, Kilgore's counsel made requests relating to jury instructions.  Based on the requests, the court agreed to include an instruction on assault as a lesser included offense of the charge of aggravated assault.  Implicitly determining that the defenses of self-defense, 17-A M.R.S. § 108 (2025); duress, 17-A M.R.S. § 103-A (2025); and competing harms, 17-A M.R.S. § 103 (2025) had been placed at issue, the court also agreed to address all three in the course of its instructions to the jury.  After closing arguments, the court gave its jury instructions.

[¶12]  The first charge addressed in the instructions was aggravated assault.  After explaining the elements of the offense, the court instructed the

---

[4] The court admitted several of the State's exhibits, which included photos of Merry's injuries and photos of Kilgore's driver's license.  On Kilgore's motion, the court later admitted a physical copy of his driver's license.

jury, without mentioning the State's burden to disprove the existence of defenses, "If you decide that the State has proven all three elements beyond a reasonable doubt, the defendant is guilty of aggravated assault." The court then turned to the lesser included offense of assault and, again without referring to the State's burden on defenses, instructed the jury, "[I]f the State proves those elements of assault beyond a reasonable doubt then the defendant is guilty of that offense, the offense of simple assault or assault."

[¶13] The court next gave an instruction on self-defense that was specific to the aggravated assault charge. In the self-defense instruction, the court first explained the State's obligation to disprove the defense beyond a reasonable doubt. It then added, "If you find that the State has not proven either that the defendant was not acting in self-defense or that his beliefs that led to his actions were a gross deviation from what a reasonable and prudent person would believe in the same situation, then you must find the defendant not guilty."

[¶14] After giving the self-defense instruction, the court instructed the jury on the second charge, assault on an officer. It told the jury that, if the State proved the elements of the offense, "your verdict on the charge of . . . assault on an officer would be guilty." It then added, without restating the State's burden

to disprove self-defense, that "[t]he issue of self-defense also comes into play . . . in the case of the charge of assault on an officer."

[¶15] The court proceeded to instruct the jury on the other five charges before explaining the remaining two defenses—duress and competing harms. For these defenses, the court instructed the jury that they "are applicable to all of the offenses that you will have to consider." As it did for the self-defense instruction, the court also instructed the jury that "the State must prove beyond a reasonable doubt" that neither of these defenses applied. However, the court did not explain, as it had in instructing the jury on self-defense, that the State's failure to disprove these defenses required the jury to acquit Kilgore.

[¶16] At the conclusion of the instructions, the jury received a written copy of the instructions to refer to in the jury room. During deliberations, the jury sent a series of questions to the court. First, concerning self-defense, the jury asked, "Is this definition in regard to [Officer] Merry or Mr. Kilgore? Who has the right to use it?" The court replied that the definition applied only to Kilgore. Second, the jury inquired as to whether "duress falls under the assault charge—just under the assault charge." The court answered that "the issue of duress applies to all charges." Third, the jury asked, "Does being under duress change the outcomes of guilt[y] or not guilty on all charges?" Over Kilgore's

objection, the court issued the following response: "You may consider whether the defendant acted under duress with respect to each charge. Remember that you must consider each charge separately and independently." In his objection, Kilgore indicated that the court should have added the additional reminder that the jury "must consider . . . any applicable defenses that the State is required to disprove beyond a reasonable doubt."[5] Finally, the jury submitted a fourth question, "[I]f we choose he is guilty of one of the assaults, would he then be guilty of an additional assault?" The court responded by emphasizing to the jury "that each of the charges has to be considered separately and independently." On defense counsel's recommendation, the court also included a reminder about the need for the State to disprove applicable defenses beyond a reasonable doubt.[6] Once the court agreed to include this additional recommendation by defense counsel, the court asked, "[Y]ou're good with

---

[5] Kilgore objected to other portions of the jury instructions that are not at issue on appeal. For instance, he objected to the inclusion of summary paragraphs in the instructions on assault on an officer and criminal speed.

[6] The court's full response to the jury's fourth question stated:

> You also, however, in the most recent note, had listed, in order, aggravated assault, assault, and assault of an officer and had asked, if we choose that he's guilty of one of the assaults, would he then be guilty of an additional assault. I want to remind you of the instruction that I gave earlier, that each of the charges has to be considered separately and independently. And you have to make the decision about whether the State has proven each of the elements of the separate offense beyond a reasonable doubt and has disproven any appropriate defenses beyond a reasonable doubt. So you have to consider them separately and independently.

that?" and defense counsel replied, "Yes." Although the court spoke to the jury when responding to the jury's four separate questions, the court did not modify the written instructions that it had previously provided.

[¶17] The jury found Kilgore guilty of the lesser included offense of assault in Count 1 and found him guilty of Count 2, assault on an officer. The jury found Kilgore not guilty on the other counts. The court denied Kilgore's renewed motion for a judgment of acquittal, reasoning that the jury could have reasonably found Kilgore guilty of these charges—without finding him guilty of aggravated assault—either by finding the bodily injury to have occurred from the closing of the window or by finding that Kilgore's vehicle was not a dangerous weapon in the manner it was used. *See* 17-A M.R.S. §§ 207(1)(A), 208(1)(B), 752-A(1)(A).

[¶18] At sentencing, the court concluded that it was appropriate to merge the assault conviction with the conviction for assault on an officer for purposes of the judgment because it deemed the jury's verdict on both counts to stem from the same conduct. For assault on an officer, the court then

imposed a sentence on Kilgore of forty-two months in prison, with all but nine months suspended, followed by two years of probation.[7]

[¶19] Kilgore filed a timely notice of appeal. *See* 15 M.R.S. § 2115 (2025); M.R. App P. 2B(b)(1).

## II. DISCUSSION

[¶20] On appeal, Kilgore argues that the court's jury instructions suffered from both of the defects that we discussed in *Baker*, 2015 ME 39, ¶¶ 13-16, 114 A.3d 214, in that (1) the instructions defined a pathway for the jury to find the defendant guilty based only on the elements of charges without referring to generated defenses; and (2) when discussing defenses, the instructions did not offer corresponding pathways to acquittal.[8] Kilgore did not object on either ground at trial.[9]

---

[7] Regarding the simple assault count, the court stated: "And on the lesser included simple assault, the Court merges the sentence with the sentence in connection with the charge of assault on an officer. And to the extent that it's necessary that I impose anything, I would impose a concurrent six months to be merged with the sentence on the [C]lass C offense." The judgment and commitment form also mentions that a six-month term of imprisonment has been set to be served concurrently with the forty-two-month term of imprisonment, with all but nine months suspended.

[8] Kilgore separately argues that the instructions were erroneous because they caused juror confusion. Kilgore attributes the juror confusion to various features of the court's instructions, some of which he argues also gave rise to the two deficiencies discussed in *State v. Baker*, 2015 ME 39, 114 A.3d 214. Because we resolve this appeal based on the *Baker* issue, we need not reach Kilgore's argument claiming juror confusion.

[9] In his brief, Kilgore acknowledges that his argument was not fully preserved. However, he contends that "some aspects" of the argument were preserved because he did object to the court's reinstruction following the jury's third question during deliberations. We disagree that this objection

12

[¶21]  We therefore undertake review for obvious error.  *See State v. Villacci*, 2018 ME 80, ¶ 9, 187 A.3d 576; M.R.U. Crim. P. 52(b).  When reviewing for obvious error, we must determine whether there was "(1) an error, (2) that is plain, and (3) that affects substantial rights. . . . [W]e will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings."  *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.

[¶22]  Our analysis of whether any deficiency in the court's instructions rises to the level of obvious error begins with *Baker*, 2015 ME 39, ¶¶ 10-18, 114 A.3d 214.  In *Baker*, we undertook obvious error review of jury instructions that addressed an aggravated assault charge and a claim of self-defense.  *Id.* ¶¶ 13-14.  In its aggravated assault instruction, the court in *Baker* stated, "Now, if you find that the State has proved each of the elements of the crime of aggravated assault you should return a verdict of guilty."  *Id.* ¶ 4 (quotation marks and alterations omitted).  After giving this instruction, the court next instructed on the lesser included offense of assault and then on self-defense.  *Id.*

---

was sufficient to preserve his argument under *Baker* because, in his objection, Kilgore requested a reminder that the State disprove all defenses beyond a reasonable doubt, and this reminder would not have resolved either of the two *Baker* deficiencies.

On the other hand, the State does not argue in its brief that Kilgore waived objection to the instructions at issue.  *See State v. Whitney*, 2024 ME 49, ¶ 18, 319 A.3d 1072.

In its instructions on self-defense, the court stated that if the State proved that the defendant did not qualify under the defense, "then as to this legal justification the State has met its burden of demonstrating beyond a reasonable doubt the absence of self-defense and you should find the defendant guilty of aggravated assault or assault as you have found." *Id.* ¶ 5 (quotation marks omitted). The court, however, did not instruct the jury that it was required to acquit the defendant if it found that the State did not disprove the defense. *Id.*

[¶23] We held that two flaws in the instructions, "taken together, [rose] to the level of obvious error": (1) the instruction that proof of the elements of aggravated assault required the jury to find the defendant guilty even though the defense of self-defense had been generated, and (2) the absence of an instruction stating that the State's failure to disprove the defense required an acquittal.[10] *Id.* ¶¶ 13-16.

---

[10] Avoiding the two deficiencies identified in *Baker* is a matter of deferring instruction on the pathways to verdicts of guilty and not guilty on a charge until after instruction on the elements of the offense charged and any generated defenses, and assuring that the pathways to both a guilty verdict and an acquittal are explained through instructions on the required topics in the following sequence:

(1) The elements of the substantive offense that the State must prove beyond a reasonable doubt;
(2) The elements of any justification defense that the State must disprove beyond a reasonable doubt;
(3) The elements of any affirmative defense that the defendant must prove by a preponderance of the evidence;
(4) The jury findings on the foregoing elements that would result in a guilty verdict on the charge; and

[¶24]  We have expounded upon *Baker* in several recent cases.  *See State v. Weaver*, 2016 ME 12, ¶ 13, 130 A.3d 972 (concluding that the jury instructions did not amount to obvious error where only the second of the two *Baker* flaws was present); *State v. Marquis*, 2017 ME 104, ¶¶ 24, 26, 162 A.3d 818 (reaching the same conclusion as *Weaver* where only the first *Baker* flaw was present); *Villacci*, 2018 ME 80, ¶ 19, 187 A.3d 576 (vacating a conviction where both flaws were present).

[¶25]  Here, the court's instructions contained both of the flaws that we identified in *Baker*.

[¶26]  First, although it had decided that three justification defenses were generated by the evidence and applicable to all charges, the court advised the jury on the aggravated assault charge, "If you decide that the State has proven all three elements beyond a reasonable doubt, the defendant is guilty of aggravated assault," and on the lesser included offense of assault, "[I]f the State proves those elements of assault beyond a reasonable doubt, then the

---

(5) The jury findings on the foregoing elements that would result in an acquittal on the charge.

*See* 17-A M.R.S. § 101(1)-(2) (2025).

In a trial such as this, involving multiple offenses with the same or similar elements and multiple defenses, the court may incorporate by reference a previous definition or explanation of an element or defense, but for each charge it should clearly define the jury findings that lead to verdicts of guilty and not guilty.

defendant is guilty of [assault]." Although the court clarified before instructing the jury on the charge of assault on an officer that the State was also required to prove beyond a reasonable doubt that self-defense did not apply, the first *Baker* flaw was still present at the time of the instruction on assault on an officer. Indeed, the flaw persisted because the court advised the jury, without mentioning the State's obligation to disprove the duress and competing harms defenses, that if the elements of the offense were proved beyond a reasonable doubt, "your verdict on the charge of . . . assault on an officer would be guilty." Rather than incorporating applicable defenses in explaining the pathways to verdicts of guilty and not guilty for each charged offense, the court did not present its instructions on the duress and competing harms defenses until after it had discussed the elements of all five of the remaining charged offenses.

[¶27] Second, as in *Baker*, the court failed to expressly instruct the jury to acquit Kilgore if the State failed to carry its burden of disproving the defenses of duress and competing harms, saying only that "the State must prove beyond a reasonable doubt" that the defenses did not apply. The court did indicate that the jury should acquit if the State failed to disprove the third defense—self-defense.

[¶28]   As a result, the court's "instructions were materially incomplete and thereby misstated the law."  *Villacci*, 2018 ME 80, ¶ 17, 187 A.3d 576 (quotation marks omitted).

[¶29]   At least as to the charges for which the defenses were generated,[11] the errors in the instructions were "plain," "affect[ed] substantial rights," and "seriously affect[ed] the fairness and integrity or public reputation of judicial proceedings." *Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.  The errors were plain due to the clear precedent established in *Baker* and *Villacci*.  *See United States v. Marcano*, 525 F.3d 72, 74 (1st Cir. 2008) (indicating that an error is plain if it is contrary to clearly established precedent).  As in *Baker* and *Villacci*, the instructions given "were highly prejudicial and tended to produce a manifest injustice," *Villacci*, 2018 ME 80, ¶ 20, 187 A.3d 576; *see Baker*, 2015 ME 39, ¶ 11, 114 A.3d 214; *Weaver*, 2016 ME 12, ¶¶ 9 n.4, 11, 130 A.3d 972 ("[T]o vacate the judgment on the basis of obvious error we must determine that the offending instruction when reviewed with the charge as a whole constituted highly prejudicial error tending to produce manifest injustice." (quotation marks

_____

[11]   The court's instruction that the jury should consider all three defenses—self-defense, competing harms, and duress—in deciding all charges seems open to question.  For example, it is not clear how a competing harms defense applies to the charge of failure to sign violation summons and complaint (Class E), 17-A M.R.S. § 17(1) (2025).  *See State v. Sexton*, 2017 ME 65, ¶ 19, 159 A.3d 335. Nonetheless, because we agree that one or more of the three defenses was arguably generated as to the charges of assault and assault on an officer, of which Kilgore was convicted, we cannot say that the *Baker* deficiencies were harmless.

omitted)). We further conclude that the errors affected Kilgore's substantial rights because there was a "reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *See Pabon*, 2011 ME 100, ¶ 34, 28 A.3d 1147 (emphasis, alternation, and quotation marks omitted). Indeed, several aspects of the trial enhanced the significance of the errors: the prominence of the defenses in Kilgore's defensive strategy, the "written instructions that memorialized the errors," the jury's four questions indicating a failure to comprehend the instructions, and the court's failure to "correct the deficiencies in its instructions when it had the opportunity to do so in responding to the notes the jury sent to the court during deliberations." *Baker*, 2015 ME 39, ¶¶ 21-22, 114 A.3d 214; *Villacci*, 2018 ME 80, ¶¶ 18-20, 187 A.3d 576. Under the last prong of *Pabon*, the *Baker* errors affected the fairness of Kilgore's trial because the jury was provided with a statement of the law that was as misleading as that in *Baker*.

[¶30] For these reasons, we vacate the judgment as we did in *Baker* and remand for a new trial on the charge of assault on an officer (Class C), 17-A M.R.S. § 752-A(1)(A).[12]

---

[12] The lesser included assault offense may also be submitted to the jury if either party so requests or the court in its discretion so decides. *See* 17-A M.R.S. § 13-A(1) (2025).

The entry is:

Judgment vacated.  Remanded for a new trial.

Scott F. Hess, Esq. (orally), The Law Office of Scott F. Hess, LLC, Augusta, for appellant Michael L. Kilgore

Maeghan Maloney, District Attorney, and Sarah Gracie, Asst. Dist. Atty. (orally), Office of the District Attorney, Skowhegan, for appellee State of Maine

Somerset County Unified Criminal Docket docket number CR-2022-1158
FOR CLERK REFERENCE ONLY